### THE SUPREME COUNCIL OF THE ROYAL ARCANUM

*v.*

### SARAH J. CARLEY and MARY A. CARLEY.

1. While the courts of this state must give full faith and credit to the judicial proceedings of sister states, the judgment of the courts of sister states are not like domestic judgments, conclusive on the point of jurisdiction, but when such judgments are attempted to be enforced here, lack of jurisdiction, either over the person against whom judgment is pronounced or in respect to the subject-matter of the suit, may be shown.

2. This court may refuse to give effect to the judicial proceedings of sister states when such proceedings have been procured by fraud, whether such proceedings are put forward as the foundation of an action or as a ground of defence, but the proof in such a case must be of the most satisfactory and convincing kind, for, until fraud is clearly proved, such proceedings must be accepted here as both honest and just.

3. Proof that an attorney in such proceedings has exceeded his authority does not, standing alone, furnish the slightest evidence of fraud.

4. Until the contrary is proved, every presumption must be made here in favor of the validity, regularity and justice of the judicial proceedings of a sister state.

5. Though convinced that the court of a sister state has been misled by deception, this court has no power to reinstate, in such court, a suit which that has dismissed, or to revive and restore a judgment which that court has nullified.

---

On hearing under decree of interpleader, and on answers and facts admitted.

*Mr. Wilbur A. Heisley,* for Sarah J. Carley.

*Mr. Frank P. McDermott,* for Mary A. Carley.

VAN FLEET, V. C.

The contest in this case is between two females, each of whom claims to have been the wife of one Harvey Carley during his

Royal Arcanum v. Carley.

life, and since his death to be his widow. Carley died January 29th, 1893. Several years prior to his death, Carley became a member of a corporation known as the Supreme Council of the Royal Arcanum and a contributor to its widows' and orphans' benefit fund. As such contributor, he procured the corporation, in September, 1882, to issue a certificate by which it promised to pay his wife Sarah, on his death, out of its widows' and orphans' fund, a sum not exceeding $3,000, provided, when he died, he was still a member of the corporation in good standing, and the certificate issued to Sarah had not been surrendered and another issued in its place. Sarah and Harvey were married in this state, in May, 1870, and Sarah, since then, has continued to be a citizen of this state. In May, 1891, Harvey brought an action for divorce against Sarah in the county court of Arapahoe county, Colorado. The ground alleged was desertion. Sarah appeared and answered, denying that she had deserted Harvey; but alleging that he had deserted her, and on the 3d day of October, 1891, after an *ex parte* hearing, a divorce *a vinculo* was granted. Twenty-three days afterwards, and on the 26th day of October, 1891, the court, on motion of Harvey's attorney, vacated the decree pronounced by it on the 3d, and on the 2d day of March following, the court gave the same attorney leave to withdraw permanently from the files the plaintiff's testimony, and on the 2d day of May, 1892, the court, on motion of the same attorney, dismissed Harvey's suit at his cost. A marriage ceremony was performed between Harvey and the other claimant, Mary, in the city of Brooklyn, on the 28th day of October, 1891, two days after the decree of divorce had been vacated. Immediately after the ceremony, Mary went to live with Harvey as his wife, at Summit, N. J., and she continued to live with him there until his death in January, 1893. In January, 1892, Harvey applied for a new benefit certificate. He made oath that the certificate issued in 1882 was withheld by his former wife now divorced; that he renounced all claim thereto, and requested the issue of a new certificate, payable to Mary as his wife. He also paid the fee which, by the rules of the corporation, was payable on the issue of a new certificate.

The officers of the corporation, not being satisfied that the certificate held by Sarah could be safely treated as a nullity, requested further evidence of the fact that a divorce had been granted, and subsequently, and after a copy of the whole record had been submitted, they refused to issue a new certificate. Though Harvey knew as early as January or February, 1892—probably much earlier—that the decree made in his favor on the 3d day of October, 1891, had a few days afterwards been set aside, he never, so far as appears, made the slightest effort to have the vacating order set aside and the decree reinstated. When Harvey died, the decree dismissing his Colorado suit stood in full · force and remains so to-day. After Harvey's death, Sarah made proof of his death, and both she and Mary demanded payment of the sum which became payable by his death. Sarah attempted to enforce her demand by a suit at law, whereupon the Royal Arcanum filed the bill in this case and paid the sum in controversy into court. A decree, directing the defendants to interplead and have their respective claims to the money in controversy determined by this court, having been made, the question now to be decided is, to which of the defendants must the money be awarded?

It is clear beyond all question that the money must be awarded to the person who was Harvey Carley's wife at the time of his death. The claim of each defendant rests on that ground and on that ground only. Neither claim has any other foundation. Now, while it is true that the Royal Arcanum refused to issue a certificate to Mary, and never, therefore, became bound by a written promise to pay her anything, yet it would seem to be entirely clear, as an obvious dictate of justice, if such refusal was wrongful and Mary was, in fact, Harvey's lawful wife when he applied to have the certificate changed from a person who was not his wife to the person who was, that such refusal should not be allowed to defeat the just right of the true wife. Equity, under such circumstances, would consider that Mary was, in right and justice, the owner of the certificate, in obedience to the maxim that that shall be considered as done which ought to have been done. The fact, then, that no written promise has

been made to pay the money in dispute to Mary constitutes no reason why it should not be awarded to her. But the money cannot be awarded to her unless she was the wife of Harvey at the time of his death. Whether she was his wife or not must, of course, depend entirely upon the effect which this court is obliged, by the law of the land, to give to the proceedings in the Colorado suit. If those proceedings must be given effect here according to the plain sense of their express words, then it is absolutely certain that Mary was never Harvey's wife, for, at the time of their attempted marriage, he was incompetent to contract a valid marriage with Mary, because he was then the lawful husband of another woman and remained so up to the time of his death.

The effect which must be given by the judicial tribunals of one state to the judicial proceedings of a sister state is prescribed by federal law. The constitution of the United States ordains that full faith and credit shall be given in each state to the judicial proceedings of every other state, and also that congress may prescribe the effect which judicial proceedings had in one state shall be given in each of the others. Congress, in the exercise of this power, after prescribing how such proceedings shall be authenticated to render them admissible in evidence, has declared that when so authenticated they "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." *Rev. Stat.* (*U. S.*) *p. 170 § 905.* While the constitutional provision and federal statute just mentioned have been the subject of much discussion and considerable contrariety of judicial opinion, still certain results have been reached which may now be said, in the language of Chief-Justice Beasley, " to possess the stability of rules of law. Among them may be placed the proposition that the judgments of other states are not like domestic judgments, conclusive on the point of jurisdiction. When a decision, pronounced *extra territorium*, is put in controversy, it is competent, as a defence, to show that the adjudging tribunal had no jurisdiction over the person or the subject-matter. * * * The question of jurisdiction in such cases is

always open to inquiry." *Jardine* v. *Reichert, 10 Vr. 165, 167.*
The doctrine asserted in this case has been declared in other
cases and must now be considered the settled law of this state.
*Moulin* v. *Insurance Co., 4 Zab. 222, 231 ; Robert* v. *Hodges,
1 C. E. Gr. 299, 305 ; Mackay* v. *Gordon, 5 Vr. 286, 288 ;
Davis* v. *Headley, 7 C. E. Gr. 115, 121.* This court may also
refuse to give effect to the judicial proceedings of a sister state
which have been procured by fraud or which are the product of
fraud, whether such proceedings are put forward as the founda-
tion of an action or as a ground of defence. *Davis* v. *Headley,
7 C. E. Gr. 115, 121 ; Doughty* v. *Doughty, 12 C. E. Gr. 315,
318 ; S. C. on appeal, 1 Stew. Eq. 581.* But in any case where
the court is asked to deny to the judicial proceedings of a sister
state, on the ground of fraud, the faith and credit which the
constitution and the federal statute command shall be given to
them, the truth of the charge, to make the charge successful,
must be established by the most satisfactory and convincing evi-
dence, for the court is bound by its fealty to the constitution and
interstate law, as well as by a proper respect for the tribunal
whose action is assailed, to make every presumption in favor
of the validity and justice of the proceedings. Until fraud is
clearly proved the court must accept them as both honest and
just. *Mackay* v. *Gordon, 5 Vr. 286, 290.* It is thus made
plain that the principle by which this court must govern its
action is this : Unless want of jurisdiction or fraud has been
clearly shown, the same effect, precisely, must be given here to
the sentences of vacation and dismissal, pronounced by the
Colorado court, that they have by law or usage in the State of
Colorado.

No attempt has been made on the part of Mary to show want
of jurisdiction in the Colorado court over either Harvey or the
subject-matter of the suit he instituted in Colorado. By insti-
tuting his suit there, as a citizen of that state, for the purpose
of having his marriage dissolved, Harvey voluntarily placed
himself in a position where he became not only unalterably sub-
ject to the jurisdiction of the court whose judgment he invoked,
but also where he would be conclusively bound, until reversed,

by any sentence or decree which that court should see fit to pronounce in his suit. And the court whose judgment he invoked had undoubted power, after pronouncing a decree of divorce, to set it aside for cause, and by this means put the parties back on the footing of litigants and revive the litigation; and it also had power, after the litigation was thus put in an undetermined state, to dismiss the suit for any cause which it deemed sufficient. So that it would seem to be undeniable that, unless it has been clearly shown that the action of the Colorado court, in setting aside the decree of divorce and in dismissing the suit, was procured by fraud, that action must be held everywhere throughout the United States as valid and conclusively binding on Harvey. The legal effect of that action was to put Harvey back, in matrimonial *status*, just where he was when he commenced his suit. He still remained the husband of Sarah.

But it is charged that the judicial action just mentioned was procured by fraud. Now, the only proof produced in support of this charge is an admission made in the state of the case that Harvey's attorney, in moving the vacation of the decree and the dismissal of the suit, acted without Harvey's authority or knowledge. But, giving this admission its utmost force, it is manifest that it does not prove fraud; in fact, it is not sufficient to raise even a suspicion of fraud. The most it does is to accuse Harvey's attorney of having exceeded his authority. This may be true, and yet the conduct of the attorney may have been not only free from the least taint of fraud, but highly honorable. Whether the accusation is true or false cannot be decided in the present state of the case, for there is nothing whatever before the court which tends to show why Harvey's attorney made the motions, which it is charged he made without authority and in violation of his duty, other than the following facts: It appears by the record of the Colorado suit that Harvey's attorney gave notice, on the 1st day of October, 1891, to the attorney of Sarah, that on the 3d day of the same month he would move the court for a speedy trial of the cause; that such motion was made on the 3d, and the court made an order that Harvey might proceed with the trial of his cause; Sarah failed to appear and defend;

the cause was, on the same 3d day of October, referred to a referee to take and report the testimony; the testimony was, on the same day, taken and reported, and the court, on the same day, examined and considered the testimony and made a decree of divorce. The record also shows that on the 22d day of October, 1891, nineteen days after the decree of divorce was made, the court gave Sarah's attorney permission to withdraw the papers in the suit from the files and retain them for twenty-four hours, and that four days afterwards the decree of divorce was opened and set aside by the court on motion of Harvey's attorney. The record further shows that a divorce was granted after an *ex parte* hearing, despite the fact that Sarah had, by answer, denied that she had deserted Harvey, but charged him with having deserted her; and also in spite of the fact that she had informed the court that she was a citizen of New Jersey and poor; that her witnesses resided here, and that she could not lay their evidence before the court unless Harvey was required to furnish sufficient money to enable her to do so. The order of October 3d, giving Harvey leave to proceed with the trial of his cause, was made upon this condition: that he might proceed "upon the payment by him into court of the sum of $50." Whether he complied with this condition or not does not appear. It may be that he did not, and that that was the reason why the decree was set aside. These facts render it highly probable, if not certain, that Harvey's attorney, in moving the vacation of the decree, simply asked the court to undo that which he had induced it to do contrary to justice and right; in other words, that he merely yielded, voluntarily, an unjust advantage which he had unfairly obtained for his client, and which he knew the court would not allow his client to retain.

But suppose the attorney, in moving the vacation of the decree, violated his duty and intended to commit a fraud on his client, does that fact, standing alone, show that the act of the court in vacating the decree was procured by fraud? It cannot be believed in the absence of proof that the Colorado court vacated its decree merely and solely because Harvey's attorney moved its vacation. According to the general, if not the uni-

Royal Arcanum v. Carley.

versal, course of judicial proceedings in such cases, grounds must be alleged or reasons assigned for the judicial action sought. Until the fact is shown to be otherwise, this court must, in obedience to established principle, presume that that was done in this case, and also that the grounds alleged or reasons assigned actually existed and were correctly stated, and also that they were sufficient, in the judgment of the court, to make its order vacating its decree an act of justice. This presumption puts an end to this controversy, for, as the proofs now stand, the case is destitute of the least evidence of fraud, and this court must, therefore, give the same force and effect here to the decrees of vacation and dismissal that they have in Colorado.

But suppose there was sufficient evidence in the case to convince this court that the Colorado court had been deceived and induced to do what it would not have done if no deception had been used, could this court, in the proper exercise of its jurisdiction under interstate law, deny all effect to the action of the Colorado court in setting aside the decree of divorce and dismissing suit, and then adjudge that, by force of such judicial action here, the suit was reinstated in the Colorado court and full force and effect restored to the decree of divorce? This court, as already stated, may deny full faith and credit to the judicial proceedings of a sister state, when it is proved that they are the product of fraud, but the question here goes far deeper and is of much wider import. It is this, can this court, on being convinced that a court of a sister state has been misled by deception, reinstate in that court a suit which that court has dismissed, and resurrect and give life and vigor to a judgment which that court has nullified? This court, in my judgment, has no such power. To do so would not be merely denying faith and credit to the judicial proceedings of a sister state, but it would be an attempt to pronounce here, in a judicial proceeding once pending in a court of a sister state, such judgment as this court believes that court, on the facts before this, would pronounce. This court would thus attempt to give force and effect here to a judgment which that court has not pronounced. In my judgment, no tribunal, other than the one in which the divorce suit was

instituted in Colorado, has power to reinstate that suit or to restore life and vigor to the decree, which, by its judgment as it now stands, is a nullity.

The conclusion is that the money in controversy must be awarded to Sarah. She is also entitled to costs.