FRANK GROVER and CLARENCE GROVER, partners, trading as Grover Brothers,

*v.*

EDWARD S. WOODWARD.

[Decided February 5th, 1920.]

1. Where complainants seek to restrain defendant from suing them in a foreign jurisdiction, the restraint will be granted if, and only if, complainants clearly show that the prosecution of the foreign suit is against equity and good conscience.

2. Where complainants show that the prosecution of the foreign suit is oppressive and harassing to them, and was so intended by defendant; or that defendant thereby evades, and intended so to do, an established policy of the laws of this state, defendant will be restrained from prosecuting the same.

3. *Quære.* Is any further proof requisite of actual intent by defendant to harass or evade other than the intent which will be presumed of the natural and proximate effects of the acts done?

4. The residence and the location of their established places of business of the parties, and especially of the complainants, are elements in determining whether or not defendant's prosecution of the foreign suit is inequitable.

5. *Semble.* The prosecution of the suit in the foreign jurisdiction would rarely, if ever, be restrained by this court, where both parties either resided or had their established places of business in such foreign jurisdiction.

___

On order to show cause why restraining order should not be granted.

*Mr. Aaron V. Dawes,* for the complainants.

*Mr. Patrick H. Harding,* for the defendant.

BUCHANAN, V. C.

The bill in this cause is filed to enjoin the prosecution of a suit brought in Pennsylvania by defendant against complainants. The present application is for interim restraint.

The circumstances as disclosed by the bill and affidavits on both sides are as follows:

Both complainants and defendant are, and have been for many years, residents and citizens of New Jersey.

Defendant carries on his business at Philadelphia, Pennsylvania. August 15th, 1919, complainants sold and defendant purchased two carloads of Giant potatoes, Grade No. 1, for $1,313 and $1,262.50, respectively, the potatoes to be by complainants delivered to the railroad consigned to defendant at Detroit, Michigan (apparently being destined for a customer of defendant at that place). The sale, delivery and payment were immediately completed.

The cars arrived in Detroit August 25th, and defendant received notice that about ten per cent. of the potatoes in one car, and about twenty per cent. in the other, did not qualify as Grade No. 1. This notice was forthwith transmitted by defendant to complainants. Defendant then sold the potatoes "in the open market in Detroit, and the loss on the sales were as follows:" On one car, $711.95; on the other, $543.89; total, $1,255.84.

Notice to this effect was given complainants by defendant September 17th, 1919, and defendant demanded said sum from complainants, who refused payment thereof.

Shortly before the arrival of the potatoes in Detroit, the market price of potatoes dropped materially. Immediately on receipt of defendant's notification that the potatoes had arrived in Detroit and were not up to grade, complainants investigated by telegraph and were informed that the potatoes had not yet in fact arrived, and that defendant's Detroit customer was objecting because of delay and misrouting, and were later informed that the cars had arrived and the potatoes of perfect condition and grade.

All of the witnesses as to the loading and shipping of the potatoes are residents of New Jersey. Complainants' affidavits set forth that the potatoes shipped complied with the contract of sale, not only at the time of shipment but also after their arrival and resale in Detroit—one of the complainants' affiants being a resident of New Jersey who happened to be in Detroit at that time.

Defendant, October 10th, caused a writ of foreign attachment to be issued out of the court of common pleas, in Philadelphia, and there was attached thereunder a debt of $2,100 due to complainants from one Scott (a resident of New Jersey, having his place of business in Philadelphia) for potatoes which Scott had then just purchased from complainants. Scott denies collusion with defendant.

No affidavit or proof of any kind of the alleged cause of action was filed in the Philadelphia court in the attachment suit. That court and all Philadelphia courts are congested and long delay will ensue in the prosecution and trial of the attachment suit in Philadelphia. Complainants are of undoubted and ample financial responsibility. Immediately after the attaching of the debt as aforesaid, defendant notified complainants, demanding payment of $1,273.84, plus costs of the attachment, and saying that only upon that condition would the attachment suit be discontinued. It does not appear that any further steps have been taken by defendant, either toward reducing his claim to judgment or toward having the attached debt reduced to possession.

(It was contended by defendant on the argument that complainants also had a business location in Philadelphia. This point will be discussed later.)

No proof whatever is before this court as to the provisions of the Pennsylvania statutes relative to attachment suits.

It has been established beyond question in this court (*a*) that a suit to enjoin proceedings in another court (either of this state or of a foreign jurisdiction), where the prosecution of such proceedings is alleged to be contrary to equity and good conscience, is cognizable in this court and within its general jurisdiction as a court of equity; (*b*) that in such a suit, this court, if it have jurisdiction over the person of the person prosecuting the other proceedings (whether that person be a resident or citizen of New Jersey, or of a foreign state or country), has the power to enjoin him from further prosecuting the same; and (*c*) that in a proper case, it will exercise that power and grant the restraint sought. *Bigelow* v. *Old Dominion Copper Co., 74 N. J. Eq. 457* (at *p. 473*) ; *71 Atl. Rep. 153; von Bernuth* v. *von Bernuth, 76 N. J. Eq. 177* (at *pp. 181, 184 et seq.*) ; *73 Atl. Rep. 1049.*

Both of these opinions contain quite exhaustive reviews of the authorities. See, also, *Federal Trust Co.* v. *Conklin, 87 N. J. Eq. 185* (at *p. 187*) ; *99 Atl. Rep. 109.*

It is left, then, for this court to determine in each case of this nature which comes before it whether it is a proper case for the exercise of that power.

What are the principles which are to be considered in arriving at such determination in any given case?

Chancellor Magie says in *Standard Roller Bearing Co.* v. *Crucible Steel Co., 71 N. J. Eq. 61* (at *p. 62*) : "The right of one claiming to be a creditor to pursue his debtor in any court of competent jurisdiction selected by him ought not to be interfered with by an injunction, unless it is made to appear clearly that the alleged creditor is using the process of the courts in an inequitable and unconscionable manner."

Chancellor Pitney, in *Bigelow* v. *Old Dominion, &c., Co., supra* (at *p. 473*), uses the following language:

"But, on general principles, equity will not interfere with the right of any person to bring an action for the redress of griev-

ances—the right preservative of all rights—except for grave reasons, and on grounds of comity the power of one state to interfere with a litigant who is in due course pursuing his rights and remedies in the courts of another state ought to be sparingly exercised. The courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction over the courts of Massachusetts, nor proceed in giving judgment here upon the idea that the courts of that commonwealth are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction."

In *von Bernuth* v. *von Bernuth, supra,* Vice-Chancellor Howell refers to Chancellor Pitney's opinion in the *Bigelow Case,* above quoted, saying that in that case "Chancellor Pitney declares that the power of this court to restrain persons within the control of its process from prosecution of suits in other states is clear, but holds that upon grounds of comity it should be sparingly exercised."

A cursory reading of the quoted portions of the opinions above cited might give rise to the impression—certainly, counsel for defendant seems to have had such impression—that more stringent requirements are to be met by complainant in a case of this kind than in other cases where injunctive relief is sought. I do not so understand the language of these opinions (aside from the fact that in certain cases questions of comity must needs be considered), nor do I think such interpretation warranted.

Omitting the question of comity, the authorities cited simply declare that complainant must allege and prove circumstances clearly entitling him, as a matter of equity, to the injunctive relief—circumstances clearly showing that the prosecution of the proceedings in the other forum is or will be contrary to equity and good conscience. Otherwise, as in any other case, his bill will be dismissed or the relief denied for want of equity. And, as in any other case, injunctive relief will not be granted in doubtful circumstances. In other words, the court will not interfere with the prosecution of a suit in another forum merely because the parties are residents or citizens of New Jersey and the case might have been brought in this court, or in a court of this state. No case for equitable relief is thereby made out.

Complainant must, as has been said, set up circumstances clearly showing that equitable principles require the granting of the restraint sought.

Turning, now, to the question of comity, I think that the cases in which comity, as such, is actually involved, will be found to be quite rare. In most of the cases in which at first impression comity might appear to be a factor, the contrary will be found to be true, upon consideration. For instance, if complainant's bill shows nothing more than a desire to have the controversy tried in this court instead of a foreign court, or an attempt to have this court review the judgment of a foreign court of competent jurisdiction, or the like, the relief will be denied, not upon grounds of comity, but because he fails to make out an equitable case.

So, too, in a case where this court might hold that the prosecution of the foreign action was fraudulent or oppressive toward complainant, if defendant were a resident of New Jersey, the opposite conclusion might be reached if the defendant were a resident of the foreign state. The question of comity will not be involved. *Kempson* v. *Kempson, 58 N. J. Eq. 94,* is illustrative of this. If the husband in that case had been a *bona fide* resident of Dakota, this court would not have restrained his prosecution of the Dakota suit, because it could not have found anything inequitable in his so doing.

Circumstances showing a case for equitable relief, obviously, may fall under divers classes of equitable jurisdiction, many of which are enumerated by Chancellor Pitney in his opinion in the *Bigelow Case.* In the case *sub judice* it is contended that defendant's action is inequitable, in that he oppresses complainant by obtaining an unconscionable advantage in the foreign attachment suit, similar to the situation in *Standard Roller Bearing Co.* v. *Crucible Steel Co., supra,* and that there is further oppression, in that he has brought the suit in Pennsylvania to evade the policy of this state in regard to attachment suits, following the doctrine of *Margarum* v. *Moon, 63 N. J. Eq. 586; 53 Atl. Rep. 179.*

Omitting for the present the question of the effect of the busi-

ness location in Philadelphia of defendant or complainants, it clearly appears that complainants have a *bona fide* defence to defendant's claim, which they are entitled to have tried out; that the witnesses are some in New Jersey and some in Michigan, but none in Pennsylvania; that the result of defendant's attachment in Pennsylvania is to tie up for an indefinitely long period moneys of complainants amounting to almost double the sum claimed by defendant.

The actual result of defendant bringing the litigation in Pennsylvania is, of course, oppressive to complainants, because it deprives them of the ability to compel the attendance of the New Jersey witnesses at the trial. The facts in this respect do not make out as strong a case of injustice as in *Standard Roller Bearing Co.* v. *Crucible Steel Co.,* where the foreign attachments were three in number, in far distant states, and each in a different state—and bearing in mind that complainant had his place of business in the place where he brought this suit, it may be doubted if a case for equitable relief would be established in this behalf unless it appeared that defendant had the intent to oppress. Not every hardship is an oppression.

The actual result of defendant's suit being commenced by the attachment of the $2,100 debt due to complainants is, of course, also a hardship to complainants and an advantage to defendant—but would not of itself justify intervention by this court. In the present case, however, it was unnecessary for defendant to proceed by attachment. Complainants were residents of this state as well as defendant and could have been served with the ordinary process to compel appearance to respond to defendant's suit just as easily as by attachment in Pennsylvania. Indeed, except for collusion by the garnishee, or chance knowledge by defendant, it would scarcely be expected that defendant could learn of a debt due complainants from a Philadelphia citizen and attach the same, as readily or speedily as he could serve complainants with summons in this state.

The writ of attachment is an extraordinary writ. *City Bank* v. *Merril, 13 N. J. Law 131* (at p. *134*); *Leonard* v. *Stout, 36 N. J. Law 370* (at p. *371*). The classes of cases for which it is intended are two—first, to compel a non-resident or absconding

debtor to appear and respond to suit; second, those cases where defendant may be held to bail. *1 Comp. Stat. p. 132 § 1; 3 Comp. Stat. p. 4076 § 84.* It is not, of course, contended that defendant's alleged right of action falls within the second class. In a case such as that set up by defendant it is evident that the established policy of this state is, that a defendant shall not be subjected to the hardships of this extraordinary writ, except where the defendant is a non-resident of this state, or, being ordinarily a resident, absconds and becomes temporarily a non-resident; in other words, unless the use of this writ is necessary to compel response to plaintiff's demand; and, furthermore, that even in a case of such necessity, the writ shall not issue unless the damages claimed are liquidated (see *Heckscher* v. *Trotter, 48 N. J. Law 419; Wynant* v. *Nautical School, 27 N. J. L. J. 202*), and sworn proof of the existence of the debt, and the amount thereof, as well as of debtor's non-residence, be first filed by plaintiff. It is contrary to the policy of this state to permit a plaintiff, except under the circumstances and in the manner above mentioned, to obtain security for his claim, or to interfere with or encumber defendant's property or choses in action, prior to plaintiff's establishing his claim by judgment.

In the present case, it appears that the writ was issued without the filing of any affidavit or proof of the facts required under the policy of this state.

Furthermore, it appears that the writ would not have been issuable under the policy of this state, for the damages to which defendant would be entitled if his right of action be established, are not liquidated but unliquidated.

It is true that defendant says his claim is for a sum certain—$1,255.89—the alleged difference or loss on the resale of the potatoes. The sale, however, was made, was to be performed, and was performed, in this state, and the questions arising out of that contract and its performance are therefore to be decided under our Sales act. *4 Comp. Stat. p. 4647.* From a consideration of that statute it is apparent that the defendant's alleged right of action (he not having rejected the shipment as not being a delivery of the thing he purchased) is for breach of the

17

warranty of quality.    Paragraphs 6 and 7 of section 69 of the statute provide:

"MEASURE OF DAMAGES FOR BREACH OF WARRANTY—(6). The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty.

"MEASURE OF DAMAGES FOR BREACH OF WARRANTY OF QUALITY—(7). In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. .P. L. 1907 p. 338."

Obviously, therefore, the sum, if any, which defendant is entitled to recover from complainants is unliquidated, and is not, and will not be (except by mere chance coincidence), the sum claimed by defendant.   For, while the value of Grade 1 potatoes might be definitely fixed and ascertainable, yet it is impossible to see how the actual value of potatoes, defective in accordance with defendant's claims, could be ascertainable without the intervention of a jury.   It is not alleged even that the sale at Detroit was for the highest and best price obtainable, and if it were, the value at Detroit is not the value at Hightstown at the time of delivery.

It is evident, therefore, that in bringing his attachment suit defendant is, in fact, evading an "established policy of the jurisdiction where the parties are domiciled."

Many of the cases seem to indicate that defendant's intent or purpose to harass and oppress or to evade the established policy of the domicile is a requisite factor in the establishment of complainants' case.

Whether the intent, which will be presumed, of the proximate and natural consequences of the acts performed, is or is not sufficient, I am not called upon to decide—for it is clear to me that the actual intent to gain an unfair advantage by harassing and oppressing the complainants is shown in this case.

Defendant in his affidavit denies that he had any such intent, but a little later says that he had the writ of attachment issued on the advice of his attorney.   That which defendant did through his attorney, he none the less did himself.   His attor-

ney's intent is chargeable to him. There is no affidavit by the attorney, and no denial that the attorney had such intent.

That the attorney did have such intent seems to me undoubted. He knew the congestion of the Philadelphia courts and the long delay that must precede a trial there; he knew that the natural place for the bringing of the suit was this state; he knew the effect which the tying up of complainants' funds by attachment, and the other features attendant upon an attachment suit in Pennsylvania, would tend to have toward forcing complainants to pay or compromise the disputed claim. It is not denied that he wrote complainants immediately after the attachment, demanding payment of $1,273.84 and costs, and saying that only upon such payment would the attachment be discontinued. To me this is most significant. Why should such a letter have been written at all, especially by the attorney? Defendant had attempted the collection of the claim by correspondence, and by draft upon complainants; complainants denied liability, under circumstances indicating a *bona fide* defence, and not a mere attempt to evade payment of an honest debt, and litigation had become the necessary and natural result in order to determine the issue. No explanation of the commencing of such litigation was required nor to be expected. It does not appear that any attempt was made to serve complainants with summons in Philadelphia, nor any request for the acknowledgment of service, or entry of an appearance. Under these circumstances, the letter clearly indicates that it meant, and was intended to be so understood, "We have you foul; pay our demand or take the consequences." It necessarily follows that the intent or purpose of the acts which resulted in giving the defendant the unfair advantage was precisely the obtaining of such advantage.

Remains to be considered the question of the location of the places of business of the parties in Philadelphia. If complainants were established in business there, it does not seem to me that they could well complain that defendant was taking an unfair advantage, or doing an inequitable act in bringing suit against them there, any more than they could if they were residents of Pennsylvania.

I do not mean to be understood as being of the opinion that this court would never entertain a bill of this nature where the defendant in the foreign suit was, or even where both parties to that suit were, residents of the foreign state. Cases might, perhaps, arise where this court would exercise its undoubted power (if it had acquired personal jurisdiction over the parties), but it is obvious that such cases would be rare, indeed, if any.

The same considerations must prevail with almost, if not quite, equal force, where the defendant, or both parties in the foreign suit, have an established place of business in the foreign state. Such a person is a *quasi*-resident—a "business resident," so to speak—of the foreign state, and ought not to be heard to complain of being sued therein unless other strong circumstances exist to make up a case for equitable intervention.

In the instant case, it is set forth, and not denied, that the sale to defendant and the sale to the garnishee were made at Hightstown, New Jersey. Complainants' affidavits say squarely that complainants have no place of business in Philadelphia, and that all their business is done at Hightstown, New Jersey. This is not met by the evasive or argumentative statements in defendant's affidavits that complainants "carried on business by the sale of potatoes through the Philadelphia market," and "I knew that the said complainants traded in the city of Philadelphia just the same as I did." Every single customer of complainants might be a resident of Philadelphia without complainants having any place of business in Philadelphia. Receiving orders by mail or telephone from Philadelphia is by no means equivalent to having a business establishment in that city.

I conclude, therefore, that complainants are entitled to the relief sought and will advise an order for temporary restraint. Complainants will not be required at the present time to give security—the situation which may be developed upon final hearing may or may not lead to a different conclusion at that time. The issues involved in the main controversy between the parties are obviously cognizable at law and not in equity. The order will provide that complainants shall co-operate with defendant

in the institution and prosecution, with all reasonable dispatch, of an action in a court of competent jurisdiction of this state, if defendant shall so elect to proceed before final hearing herein, and that upon failure in that behalf by complainants, application may be made for the discharge of the restraint.