The bill of complaint in this cause is a bill in aid of a judgment heretofore recovered in the New Jersey Supreme *Page 189 
Court praying for discovery and that a conveyance be set aside as allegedly fraudulent. This judgment is founded upon a judgment theretofore recovered in the Common Pleas Court of Philadelphia County, Pennsylvania.
The answer and counter-claim of defendants, in brief, pray for affirmative relief to the extent that the complainant be required to make a full, true and perfect accounting of receipts and expenditures made by it in connection with a property upon which there was given a mortgage as collateral security for the bond upon which judgment was entered in Pennsylvania, and further pray that the complainant be enjoined and restrained from taking or maintaining any further proceedings upon the said judgment and execution thereon recovered in the New Jersey Supreme Court, as well as the judgment recovered in the Common Pleas Court of Philadelphia County, Pennsylvania.
The facts as elicited upon final hearing demonstrated that on or about December 9th, 1926, the defendants Joseph I.A. Thompson and Lillian R. Thompson, his wife, then residing in Philadelphia, Pennsylvania, being indebted to the complainant in the sum of $16,500, delivered to it their promissory note in that amount. At the same time and as collateral security for the payment of said promissory note, Joseph I.A. Thompson and Lillian R. Thompson also delivered to complainant a bond in the amount of $16,500 with a warrant to confess judgment thereto attached, which said bond was secured by a mortgage upon certain real estate situate in Philadelphia, Pennsylvania. The bond provided for the production "to the obligee, its successors or assigns, on or before the 1st day of October of each and every year receipts for all taxes and water rents for the current year * * *," and provided further that upon default "of any such production to the obligee or its successors or assigns on or before the 1st day of October of each and every year of such receipts for the taxes and water rents of the current year assessed upon the mortgaged premises, * * * the whole principal debt aforesaid shall, at the option of said obligee * * * become due and payable immediately and payment of said principal debt and all interest thereon may be enforced and recovered at *Page 190 
once, anything therein contained to the contrary notwithstanding."
Up to September 20th, 1937, the said Joseph I.A. Thompson and Lillian R. Thompson had made payments on account of the principal of said loan in the total amount of $3,000. During the month of September, 1937, the said Joseph I.A. Thompson and Lillian R. Thompson sold another parcel of real estate owned by them in Philadelphia, Pennsylvania, for which they received the net amount of $3,718.16. This sum was likewise paid to complainant on account of the above referred to loan. In the meantime, Joseph I.A. Thompson and Lillian R. Thompson had, from time to time, given renewal notes for the balances then due. On June 7th, 1940, on which date one of the renewal notes fell due, Joseph I.A. Thompson and Lillian R. Thompson gave to complainant a promissory note in the amount of $11,281.84, which said note became due and payable on September 7th, 1940.
In October of 1937 the complainant, with the consent of Joseph I.A. Thompson and Lillian R. Thompson, took over the management of the property upon which it held the mortgage to secure the above referred to bond, as a mortgagee in possession.
By letter dated June 11th, 1940, the complainant forwarded its first statement of account showing its collections and disbursements from said property from October 15th, 1937, to June 7th, 1940, and exhibited in said statement that it had disbursed the sum of $229.31 for the following purpose: "Paid City and School Taxes for 1939." In said letter complainant stated as follows:
"You will find enclosed a statement of earnings and expenses from October 15, 1937 to June 7, 1940, showing a balance of $801.92 due the bank for money advanced for taxes and repairs.
"The loan is $11,281.84, so that the total amount due the bank on June 7th was $12,083.76."
Complainant recognized that the sum due it was due on account of the promissory note and not on account of the bond given as collateral security for said promissory note.
On June 11th, 1940, James E. Gallen, attorney for the complainant herein, entered his appearance and confessed *Page 191 
judgment by virtue of the warrant above set forth. In said entry of judgment the basis therefor was set forth as follows:
"* * * default having occurred under the terms of the said bond in that defendants have failed to produce 1939 tax receipts."
Subsequent to this entry of judgment further steps were taken in accordance with the requirements of the Pennsylvania law. Thereafter summons and complaint were personally served upon Joseph I.A. Thompson and Lillian R. Thompson on August 30th, 1945, in New Jersey in a New Jersey Supreme Court action predicated upon the Pennsylvania judgment. No answer having been made by either of the said defendants, judgment was entered against them on September 24th, 1945, in the sum of $3,589.54, being the balance then allegedly due after a credit was given for payments on account of the indebtedness and the value of the mortgaged real estate.
The defendants, in effect, here allege that the Pennsylvania judgment was void at its inception and therefore pray for an injunction as above set forth.
Complainant contends that full faith and credit must be accorded the Pennsylvania judgment under article IV, section 1 of the United States Constitution, and that Joseph I.A. Thompson and Lillian R. Thompson not having filed an answer or litigated in our Supreme Court, are now barred from attacking the New Jersey judgment on the doctrine of res adjudicata.
For some years after the adoption of the United States Constitution there was considerable dispute as to the effect and intent of article IV, section 1. Since that time the doubts have been resolved and it has so often been interpreted that the broad general effect of the provision "that full faith and credit be given in each state to the public acts, records and judicial proceedings of every state," has become crystallized and is almost academic. This mandate is, of course, not absolute in barring any defense to a suit on a foreign judgment, but is subject to some exceptions. Where suit at law is brought in this State upon a judgment of a sister state, the defendant has the following defenses available to such suit, *Page 192 
(1) that the sister state did not have jurisdiction of the person or of the subject-matter; (2) that it was fraudulently procured, or (3) that it had been paid. National Surety Co. v. Mulligan,105 N.J. Law 336; 146 Atl. Rep. 372; White v. Mindes,106 N.J. Law 606; 146 Atl. Rep. 918; Friedland v. Isquith, 106 N.J. Eq. 344; 150 Atl. Rep. 840; Royal Arcanum v. Carley, 52 N.J. Eq. 642; 29 Atl. Rep. 813; Jardine v. Reichert, 39 N.J. Law 165;Mackay and Lusher ads. Gordon, 34 N.J. Law 286; Walter v.Keuthe, 98 N.J. Law 823; 121 Atl. Rep. 624; Fairchild v.Fairchild, 53 N.J. Eq. 678; 34 Atl. Rep. 10.
We are here not concerned with the first and third defenses referred to above. The defense, if any, in the case sub judice
falls into the second category, i.e., those judgments fraudulently obtained.
The proffered defense of fraud finds its foundation in the contention of Joseph I.A. Thompson and Lillian R. Thompson that the Pennsylvania judgment was procured by a fraudulent imposition upon the court of that state.
Fraud, to be available as a defense against an action on a foreign judgment, must be extrinsic fraud. It must be a fraud in the procurement of the judgment rather than a fraud attendant upon the cause of action itself.
As stated in Clark v. Board of Education, 76 N.J. Eq. 326;74 Atl. Rep. 319:
"Equity interferes with judgments at law only where there has been fraud, or mistake, or accident in procuring the judgment, and where the legal remedies are inadequate."
The judgment cannot be impeached for any supposed defect or irregularity in the transaction upon which it was founded. FirstNational Bank of Brooklyn v. Wallis, 59 N.J. Law 46;34 Atl. Rep. 983; Walter v. Keuthe, supra.
As stated in First Baptist Church of Hoboken v. Syms,51 N.J. Eq. 363; 28 Atl. Rep. 461:
"It deals with the consciences of the parties to a judgment, and will inquire whether those parties, or either of them, have intentionally withheld or concealed from the court in which the judgment was rendered, any fact which, if disclosed, would have shown that there was either no cause of action or no warrant for the amount of the recovery." *Page 193 
Therefore, in view of the fact that Joseph I.A. Thompson and Lillian R. Thompson contend that there was a fraud attendant upon the entry of the Pennsylvania judgment, the United States constitutional provision for full faith and credit does not bar them from raising such defense. The contention of complainant that in any event, even in the original action in the New Jersey Supreme Court, these defendants would be precluded from making such a defense, is without legal support.
The preceding discussion applies, of course, to such a defense in the original suit in New Jersey upon a judgment of a sister state.
There remains for determination (1) the power of the Court of Chancery generally to enjoin the enforcement of judgments at law where it is alleged that such judgments were fraudulently procured; (2) the power of the Court of Chancery to enjoin the enforcement of a domestic judgment based upon a judgment of a sister state, as well as to so enjoin the enforcement of the basic foreign judgment where it is alleged that such foreign judgment was fraudulently procured; (3) whether the attack upon such judgments as here made is collateral and whether the defendants are therefore estopped from making such defense by the doctrine of res adjudicata. These questions are raised by the plea of res adjudicata.
There is ancient and inherent authority for the Court of Chancery to restrain the enforcement of judgments at law where the judgment was obtained by fraud. Tomkins v. Tomkins,11 N.J. Eq. 512; Doughty v. Doughty, 27 N.J. Eq. 315; RoyalArcanum v. Carley, supra; Davis v. Headley, 22 N.J. Eq. 115.
While it is well recognized that courts of equity have no power to sit in judgment on the lawful acts of other tribunals and have no jurisdiction to try their acts to see whether they, in the exercise of their rightful powers, have committed errors, either of law or fact, yet their power to give relief against a judgment procured by fraud is beyond all question. In Dringer v.Receiver of Erie Railway, 42 N.J. Eq. 573; 8 Atl. Rep. 811, the court said: *Page 194 
"This court has, however, an original, inherent and independent jurisdiction to give relief against fraud, whether it be perpetrated by means of a contract, or a judgment or decree."
Equity will interfere when, as stated in First Baptist Churchof Hoboken v. Syms, supra:
"This court cannot sit in judgment upon the lawful acts of other courts and review the conduct of those tribunals, to see whether, in the exercise of their rightful powers, they have committed error either in law or in fact, but its power to give relief against a judgment which has been procured by fraud or imposition upon another court, is beyond all question. Glover
v. Hedges, Sax. 119; Boulton v. Scott's Administrator, 2 GreenCh. 236; Tomkins v. Tomkins, 3 Stock. 512; Reeves v. Cooper,1 Beas. 223; S.C., 1 Beas. 498; Stratton v. Allen, 1 C.E. Gr.229; Doughty v. Doughty, 12 C.E. Gr. 315; S.C., 1 Stew. Eq.581; Cairo and Fulton Railroad Co. v. Totus, 1 Stew. Eq. 269;Mechanics' National Bank v. Burnett Manufacturing Co., 6 Stew.Eq. 486; Cutter v. Kline, 8 Stew. Eq. 534; Herbert v.Herbert, 4 Dick. Ch. Rep. 70; S.C., 4 Dick. Ch. Rep. 566."
See, also, Clark v. Board of Education of Bayonne, supra;Royal Arcanum v. Carley, supra; Giehrach v. Rupp, 112 N.J. Eq. 296; 164 Atl. Rep. 465.
There is no distinction between the power of the Court of Chancery to permit an attack upon a domestic judgment recovered in an original action in this State and a judgment here obtained which is predicated upon a judgment of a sister state.
In Doughty v. Doughty, supra, the court said (at p. 318):
"There can be no doubt that a court of equity has power to look into the judgments of other courts, and if it appears they are infected with fraud, to give relief against them. This power has been repeatedly recognized in this State. Glover v. Hedges,Sax. 119; Boulton v. Scott's Adm'rs, 2 Green's Ch. 231; VanMeter v. Jones' Ex'rs, Ib. 523; Powers' Ex'rs, v. Butler'sAdm'rs, 3 Green's Ch. 465. And the power of the court to relieve against fraudulent judgments is not limited to judgments recovered in the courts of the same state, *Page 195 
but may be exerted against judgments recovered in the courts of other states, whenever they are sought to be made the foundation of an action or a defence. Davis v. Headley, 7 C.E. Gr. 123;Pearce v. Olney, 20 Conn. 544; Dobson v. Pearce, 12 N.Y. 165."
In Royal Arcanum v. Carley, supra, the court said (at p.645):
"The effect which must be given by the judicial tribunals of one state to the judicial proceedings of a sister state is prescribed by federal law. The constitution of the United States ordains that full faith and credit shall be given in each state to the judicial proceedings of every other state, and also that congress may prescribe the effect which judicial proceedings had in one state shall be given in each of the others. Congress, in the exercise of this power, after prescribing how such proceedings shall be authenticated to render them admissible in evidence, has declared that when so authenticated they `shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken.' Rev. Stat. (U.S.) p.170, § 905. While the constitutional provision and federal statute just mentioned have been the subject of much discussion and considerable contrariety of judicial opinion, still certain results have been reached which may now be said, in the language of Chief-Justice Beasley, `to possess the stability of rules of law. Among them may be placed the proposition that the judgments of other states are not like domestic judgments, conclusive on the point of jurisdiction. When a decision, pronounced extraterritorium, is put in controversy, it is competent, as a defence, to show that the adjudging tribunal had no jurisdiction over the person or the subject-matter. * * * The question of jurisdiction in such cases is always open to inquiry.' Jardine
v. Reichert, 10 Vr. 165, 167. The doctrine asserted in this case has been declared in other cases and must now be considered the settled law of this state. Moulin v. Insurance Co., 4 Zab.222, 231; Robert v. Hodges, 1 C.E. Gr. 299, 305; Mackay v.Gordon, 5 Vr. 286, 288; Davis v. Headley, 7 C.E. Gr. 115,121. This court may also refuse to give effect to the *Page 196 
judicial proceedings of a sister state which have been procured by fraud or which are the product of fraud, whether such proceedings are put forward as the foundation of an action or as a ground of defence. Davis v. Headley, 7 C.E. Gr. 115, 121;Doughty v. Doughty, 12 C.E. Gr. 315, 318; S.C. on appeal, 1Stew. Eq. 581."
In Wilson v. Anthony, 72 N.J. Eq. 836; 66 Atl. Rep. 907;
affirmed, 75 N.J. Eq. 299; 78 Atl. Rep. 1135, the facts were as follows: A default judgment was recovered in New York. Thereafter suit was commenced in this State predicated upon the New York judgment. To this latter suit an answer was filed and a trial had, with a resulting verdict for the plaintiff. Appeal was then taken to our Court of Errors and Appeals where the judgment was affirmed. Wilson, the judgment debtor, thereupon filed a bill in our Court of Chancery praying for an injunction against the enforcement of both the New Jersey and the New York judgments. Upon the question of jurisdiction the court there said:
"The jurisdiction of this court to interfere with the enforcement of judgment at law is undoubted and is not questioned by the defendants. The cases on the subject in our own state are so numerous that they cannot all be alluded to. In this case the court is asked to enjoin enforcement of a domestic judgment for the reason that the foreign judgment, which was its foundation, was obtained by fraud."
The question of comity is plainly answered in Robins v.Robins, 103 N.J. Eq. 26; 142 Atl. Rep. 168:
"Finally, there is no question of comity, because it is universally the law that effect will not be given to any judgment of a foreign state that is infected by fraud."
Having disposed of the power of the Court of Chancery to enjoin the enforcement of a domestic judgment based upon a judgment of a sister state, it becomes necessary to ascertain whether the enforcement of the fundamental judgment may be enjoined in the state where recovered.
The power of the Court of Chancery of New Jersey to restrain its own citizens or other persons within the control of its process from the prosecution of suits in foreign states is undoubted. This power, however, should be sparingly exercised and then only under certain positive circumstances. *Page 197 
 In Bigelow v. Old Dominion Copper, c., Co., 74 N.J. Eq. 457; 71 Atl. Rep. 153, this court said (at p. 473):
"I have not the least doubt or difficulty about the power of a court of equity in one state to restrain its own citizens, or other persons within the control of its process, from the prosecution of suits in other states or in foreign countries. The power proceeds from the undoubted authority that a court of equity possesses over persons within its jurisdiction to restrain them from doing anything that is contrary to equity and good conscience, to the wrong and injury of others, whether the threatened inequitable conduct consists in the prosecution of an action or whatever it may happen to be."
"But on general principles, equity will not interfere with the right of any person to bring an action for the redress of grievances — the right preservative of all rights — except for grave reasons, and on grounds of comity the power of one state to interfere with a litigant who is in due course pursuing his rights and remedies in the courts of another state ought to be sparingly exercised. The courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction over the courts of Massachusetts, nor proceed in giving judgment here upon the idea that the courts of that commonwealth are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction."
Equity will not generally interfere unless process is being used in an unconscionable manner or unless the case involves some equitable element which the foreign court cannot apply.
See, also, Von Bernuth v. Von Bernuth, 76 N.J. Eq. 177;73 Atl. Rep. 1049; Federal Trust Co. v. Conklin, 87 N.J. Eq. 185;99 Atl. Rep. 109; Prudential Insurance Co. v. Merritt-Chapman Scott Corp., 112 N.J. Eq. 179; 163 Atl. Rep. 894; Margarum v.Moon, 63 N.J. Eq. 586; 53 Atl. Rep. 179; Kempson v. Kempson,63 N.J. Eq. 783; 52 Atl. Rep. 360; Standard Roller Bearing Co.
v. Crucible Steel Co., 71 N.J. Eq. 61; 63 Atl. Rep. 546; LehighValley Railroad Co. v. Andrus, 91 N.J. Eq. 225;109 Atl. Rep. 746; Grover v. Woodward, 91 N.J. Eq. 250; 109 Atl. Rep. 822;14 R.C.L. 412; 28 Amer. Jur. 389. *Page 198 
 Res adjudicata is the doctrine that an existing final judgment or decree rendered upon the merits by a court of competent jurisdiction upon a matter within its jurisdiction is conclusive of the rights of the parties or their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue and adjudicated in the first suit. 30 Amer. Jur. 908; 2 Freeman onJudgments 1322.
A party or privy is not precluded or estopped, however, from attacking a judgment which is void ab initio. Such a judgment amounts to nothing and has, of course, no force as resadjudicata. A judgment so void may be attacked either directly or collaterally. One of the essential elements of the defense ofres adjudicata is that the judgment in question be one given upon the matter within the jurisdiction of the court. If the court had no jurisdiction, the judgment is a nullity.
In In re Hall, 94 N.J. Eq. 108; 118 Atl. Rep. 347, the court said (at p. 113):
"The jurisdiction of a court — its `right to speak' — is its right, or rather its power, to pronounce a particular final judgment or decree as to a particular person in a particular action. If it has no such power then its judgment is void and amounts to nothing."
See, also, In re Davis, 107 N.J. Eq. 160; 152 Atl. Rep. 188;In re Struble, 87 N.J. Eq. 311; 101 Atl. Rep. 177.
 31 Amer. Jur. (at p. 91), contains the following paragraph, which is an apt dissertation upon this subject:
"A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. It cannot affect, impair, or create rights. It is not entitled to enforcement and is, ordinarily, no protection to those who seek to enforce it. All proceedings founded on the void judgment are themselves regarded as invalid. In other words, a void judgment is regarded as a nullity, and the situation is the same as it would be if there were no judgment. It, accordingly, leaves the parties in the same position they were in before the trial."
1 Freeman on Judgments 615, states as follows: *Page 199 
"When fraud in the procurement of the judgment is established it shows that no judgment at all has been rendered, but this is limited of course to fraud that goes to the very jurisdiction of the court and does not include a judgment regularly obtained upon a fraudulent claim or by false testimony."
If the particular situation now before the court discloses that the original Pennsylvania judgment was void as alleged, the doctrine of res adjudicata is unavailable to complainants.
It is sometimes difficult to ascertain whether an attack is direct or collateral. The most acceptable theory of an attack in Chancery is that set forth in 1 Freeman on Judgments 613:
"The powers of a court of chancery in this respect are well recognized. It has inherent jurisdiction to relieve from fraudulent or void judgments particularly where the invalidating facts are not apparent from the record. Such equitable intervention is very often a party's only means of escape from the invalid decision; without it he would be left remediless. These considerations tend strongly to support the position taken by many courts that a litigant is engaging in a direct attack upon the judgment where he seeks equitable relief therefrom in the mode approved by law."
In Davis v. Headley, supra, the court said (at p. 123):
"It is true, in this case fraud is set up in defence, in that it was in support of a suit to set aside the judgment, or rather to restrain further proceedings on it. But in a court of equity, this will make no difference; it will not lend its aid to enforce a judgment obtained by fraud, when that fraud is shown. The complainant must come with clean hands in the matter on which relief is sought."
In Minzesheimer v. Doolittle, 60 N.J. Eq. 394;45 Atl. Rep. 611, the court said:
"The complainant must come into a court of equity with a cause essentially equitable; it is not enough that his cause is unquestionably legal. Rich v. Sydenham, 1 Ch. Cas. 202;Mississippi and Missouri Railroad Co. v. Cromwell, 91 U.S. 643;Randolph v. Quidnick Co., 135 U.S. 457; DeGraw v. Mechan, 3Dick. Ch. Rep. 219; Brinkerhoff v. Rensom, 12 Dick. Ch. Rep.312."
Since the courts of this State have recognized the power of the Court of Chancery to restrain the enforcement of a judgment *Page 200 
at law, the action so taken must be considered a direct attack.
The attack here made is as direct as if made by way of original bill. It is immaterial that the relief is requested by way of counter-claim or what was formerly known as "cross bill." It is not sufficient that the primary cause be merely unquestionably legal. Chancery will not lend itself to the perpetration of a fraud, nor to the assistance of one who comes before it with unclean hands. It would reduce the power and province of Chancery to an absurdity to say that it is without power to give relief in a given case because such relief is not prayed for in a primary bill but rather by way of counter-claim. The Court of Chancery has inherent power to restrain the enforcement of judgments at law whether by way of primary suit or defense whenever they have been fraudulently obtained. To hold otherwise would create an absurd situation — such a result would in effect render this court powerless to give aid to a defendant and relief to him from a judgment fraudulently obtained. Were such a doctrine tenable it would, in effect, make this court a party to such fraud. The mere statement of such a proposal gives the answer thereto. The contention that this is a collateral attack is without merit.
This being a direct attack, in order to avoid the effect of estoppel accorded to judgments by the plea of res adjudicata, the proceedings on the Pennsylvania judgment must be examined.
Where there is no condition, limitation or restriction of any kind either as to the time of the judgment or its amount, judgment may be entered in our sister state of Pennsylvania under a warrant of attorney with a bond, even though such bond is collateral security for a primary obligation upon which latter obligation there is nothing due at the time of entry of judgment.Pacific Lumber Co. v. Rodd, 135 Atl. Rep. 122; Integrity TitleInsurance Co. v. Rau, 26 Atl. Rep. 220.
Where, however, as a condition precedent to the entry of such judgment, a default must have accrued, if judgment be so entered prior to the required default, the judgment cannot *Page 201 
be sustained. Hogsett v. Lutrario, 13 Atl. Rep. 2d 902;Beers v. Fallen Timber Coal Co., 161 Atl. Rep. 2d 409.
In Hogsett v. Lutrario, supra, where judgment was entered before the required default, the court said:
"These authorities and others that might be cited amply sustain the position that the instant judgment is a void judgment."
It becomes apparent that if under the bond here in question, a default were required before judgment could be entered, absence of such default at that time would not only be a fraudulent imposition upon the Pennsylvania court but would result, under Pennsylvania law, in a void judgment.
The express terms of the present bond gave the complainant the right to enter judgment only upon a default in one of its terms. This the complainant recognized as an essential and fundamental requisite as is evidenced by its allegation in the judgment that default had occurred by reason of defendants' failure to produce tax receipts for the year 1939.
As a mortgagee in possession, complainant had certain duties and obligations. It took out of the control of the defendants the collection of the rents and the payment of the carrying charges of the property involved. After three years of operation and within a day prior to the entry of judgment it submitted a statement to the defendants showing the payment of taxes for the year 1939. On the day after receipt of this statement by the defendants the complainant entered a judgment by confession alleging that the default in the bond consisted in the defendants' failure to produce the receipt which was apparently already in its possession. Provision for the production of a receipt was quite patently prompted by complainant's desire to assure itself that the taxes had been paid. Where the complainant had this receipt in its possession and where it knew of its own knowledge that the taxes had then been paid, there was clearly no default under the bond and complainant practiced a fraud upon the Pennsylvania court by alleging such default. Its present position that the receipt was not produced by the defendants, but that it obtained the receipt itself reduces its argument to an absurdity. *Page 202 
Complainant also argues that it had advanced taxes for the years 1935, 1936 and 1937 from funds other than those received as income from the property itself and that, therefore, the defendants were delinquent in the payment of taxes for these years. Suffice it to say thereto that the default alleged for which judgment was entered in Pennsylvania was the failure to produce receipts for the 1939 taxes.
It would seem, therefore, that under the law of the State of Pennsylvania, no default having occurred upon the bond, the Pennsylvania judgment was void and must, therefore, be regarded as a nullity.
Since the Pennsylvania judgment, which was the foundation of the New Jersey judgment, was obtained by a fraudulent imposition upon the courts of that state, and was void in the state of recovery, the New Jersey judgment is as well adversely affected. The judgment in New Jersey being predicated upon a fraudulently obtained adjudication in Pennsylvania, can rise no higher than the cause of action presented in New Jersey, i.e., an alleged debt founded upon a nullity. The New Jersey judgment has, under the circumstances, no efficacy in this State and the Court of Chancery will enjoin its enforcement in New Jersey.
On the other hand, since there is no showing that any action is contemplated in Pennsylvania of an harrassing or unconscionable nature, no restraint will issue against the enforcement of the judgment there recovered, particularly since the Chancery Courts of Pennsylvania are also courts of conscience and there is no showing that defense cannot be there made and adequately passed upon. This court cannot presume that the courts of our sister state of Pennsylvania are in the least degree unable, incompetent or unwilling to do full and complete justice in connection with the judgment there recovered.
Defendants have not submitted argument in substantiation of their request for an accounting and have now advised the court that this prayer for relief is withdrawn. The balance of the prayers of defendants for relief are denied as without merit.
Complainant's bill will therefore be dismissed, and defendants' request for relief as above set forth will be granted. *Page 203