Kempson *v.* Kempson.

St. George Kempson, appellant,

*v.*

Helen A. Kempson, respondent.

[Filed June 16th, 1902.]

1. A husband and wife having their matrimonial domicile in this state, and the domicile of the wife being also here—*Held*, that the court of chancery, on a bill filed by the wife, had jurisdiction to enjoin the husband from prosecuting a suit for divorce in another state, the jurisdiction of which he had invoked on a false and fraudulent allegation of his residence in that state.

2. On such a bill filed by the wife, an injunction to stay the prosecution of the foreign suit was served on the husband personally in New York before he had been brought into court by appearance, service of subpœna or publication of notice.—*Held*, that he was bound to obey the injunction and was punishable for disobedience.

3. A court of equity should not command a defendant to do what he plainly has not power to do.

On appeal from an order advised by Vice-Chancellor Pitney, whose opinion is reported in *16 Dick. Ch. Rep. 303.*

*Mr. Robert Adrain,* for the appellant.

*Mr. Alan H. Strong,* for the respondent.

The opinion of the court was delivered by

Dixon, J.

The parties to this suit were married in 1882 and thereafter lived in this state as husband and wife until at least December,

1898. On April 10th, 1899, the wife, still residing in New Jersey, presented to the chancellor a bill of complaint, with affidavits annexed, in which she alleged that on March 29th, 1899, her husband had commenced a suit in North Dakota asking a divorce from her on the ground of cruelty; that in his petition he had averred his residence in North Dakota for a period of three months; that such a residence was necessary to induce the court in North Dakota to take cognizance of the cause; that the husband's averment of residence was false and fraudulent, and that his residence was still in New Jersey; thereupon she prayed an injunction commanding her husband to desist and refrain from all further proceedings in the North Dakota action until the further order of the chancellor. On April 28th, 1899, an injunction, according to the prayer of the bill, was issued, and on May 31st, 1899, it was served on the husband personally in the city of New York; nevertheless he proceeded with his suit in North Dakota, and on October 4th, 1899, procured a decree of divorce therein. Subsequently he was attached in this state for violating the injunction, and an order was made by the chancellor adjudging him to be in contempt and directing that he be fined $5 and costs; that he cause the decree of divorce to be set aside, and that he stand committed to the custody of the sheriff of Middlesex county until he shall have done so. From this order he now appeals.

The first question for consideration is whether the chancellor had jurisdiction of the cause in such sense as to support an injunction against the defendant, who had not been brought into court by the service of process or by appearance, and who was not within the state. If such jurisdiction did not exist, the defendant was not bound to obey the injunction (*Dodd* v. *Una, 13 Stew. Eq. 672*), but if it did, the injunction was obligatory.

It may be regarded as settled, by a long train of adjudications, culminating in *Atherton* v. *Atherton, 21 Sup. Ct. Rep. 544,* that the state, wherein are the matrimonial domicile and also the domicile of the complaining spouse, has the right to confer upon its courts jurisdiction over the matrimonial *status,* no matter where the other spouse may be. In such circumstances the matrimonial *status* is deemed to have a *situs* within the state,

resembling, for the time being, the *situs* of land, and the proceeding respecting that *status* is *quasi in rem*.   This power is recognized and upheld by foreign states, provided the state exercising it has made and carried out reasonable provision for giving to the defendant notice and an opportunity to be heard. *Felt* v. *Felt, 14 Dick. Ch. Rep. 606.*

This authority is most frequently exercised in actions for divorce, but the principle that maintains it for dissolving the marriage *status* must likewise maintain it for preserving that *status*.   To this effect is the language of Judge Cooley, in *Cooley Const. Lim. 400,* where he says: "We conceive the true rule to be that the actual *bona fide* residence of either husband or wife" (coupled, in the present case, with the matrimonial domicile) "within a state will give to that state authority to pass upon *any questions affecting his or her continuance in the marriage relation.*"   Equally broad are the expressions of Chancellor Zabriskie in *Coddington* v. *Coddington, 5 C. E. Gr. 263,* and of Judge Adams, speaking for this court, in *Hervey* v. *Hervey, 11 Dick. Ch. Rep. 424,* and they are fully warranted by the practice of the English courts touching all manner of matrimonial causes.

Under the laws of New Jersey jurisdiction over questions affecting the marriage relations of its citizens is vested in the court of chancery.   That such jurisdiction includes the right to annul foreign judgments 'fraudulently obtained affecting those relations is established by the cases of *Doughty* v. *Doughty, 1 Stew. Eq. 581; Magowan* v. *Magowan, 12 Dick. Ch. Rep. 322,* and *Streitwolf* v. *Streitwolf, 13 Dick. Ch. Rep. 563.*   If the court has power to annul such decrees for fraud, it must also, on a general principle of equity, be able to enjoin parties from attempting to obtain such decrees by fraud.

But it is argued that the jurisdiction of the court is not complete until certain steps have been taken to give the defendant notice of the suit.   Undoubtedly this is true; for even the state's authority is dependent upon some reasonable provision being made to that end; and the state has made the jurisdiction of the court dependent on compliance with certain prescribed regulations.   For the purpose of pronouncing a decree in the cause

50

there must be appearance by the defendant, or process served upon him within the state, or publication of notice to him. *Hervey* v. *Hervey, 11 Dick. Ch. Rep. 424.* But, for the purpose of giving effect to a preliminary injunction, nothing more is needed than that the defendant should have received due notice of the injunction. *Haring* v. *Kauffman, 2 Beas. 397; Cape May, &c., Railroad Co.* v. *Johnson, 8 Stew. Eq. 422.* In the *Haring Case,* as in the present case, the injunction was served on the defendant outside of this state and he had not yet been brought into court by appearance, process or publication, but it was held that the injunction was obligatory upon him.

We do not mean to say that in every case the service of an injunction outside of the state will bind the party to obedience. Such a rule would compel foreign residents to enter into litigation here whenever an injunction could be secured. Whether an injunction served beyond the borders of the state upon an individual not personally under the jurisdiction of the court will bind him, depends on the nature of the suit. If the suit be one in which the court can acquire no right to render a binding decree against an absent defendant, then its injunction, preliminary or subsequent to decree, cannot bind him. Thus, if a bill were filed here to compel a resident of New York to refrain from negotiating a bill of exchange obtained by fraud, an injunction to that effect served on the defendant in New York would be unavailing. But if the subject of the suit were a fraudulent deed of land in New Jersey, an injunction so served would be binding, because the absence of the defendant would not affect the power of the court to settle the title to the land by a decree in the cause. Such was the object of the bill in *Haring* v. *Kauffman, 2 Beas. 397.*

In the case now before us, the matrimonial domicile and the domicile of the complainant being actually within the state when the bill was filed, the court had the right to proceed to final decree against the defendant, even though he remained absent from the state, and therefore to require his obedience to the injunction, of which he had notice.

Regarding the alleged waiver of the injunction by the complainant we desire to add nothing to the opinion of the learned vice-chancellor.

The only other question open for consideration on this appeal is as to the propriety of the remedial portion of the order. *Grand Lodge* v. *Jansen, 17 Dick. Ch. Rep. 737.* It requires the defendant to cause the decree of the North Dakota court to be set aside.

We think that decree should be set aside, but evidently the defendant has not the power to ensure this result; only the court that rendered the decree can vacate it. True, if a party be commanded by the court to do a certain thing and afterwards he satisfies the court that he has not the power to do it, the court will ordinarily relieve him from the order. But when it appears at the outset that the thing to be done is not within the control of the party to be enjoined, but yet that his effort may induce its accomplishment, a more reasonable course for the court is to require the effort, not the result.

We therefore think this part of the order should be modified, so as to require the defendant to present the truth to the court in North Dakota and in good faith to urge that its decree be set aside. When that is shown to have been done and the fine and costs have been paid, the defendant should be released.

Garrison, J. (dissenting).

The test of an action *in rem* is that it acts on the *res.* The indispensable feature of every form of proceeding *in rem* or *quasi in rem* is that the thing that gives rise to the proceeding is directly affected by the proceeding: in admiralty, the thing libelled; in attachment, the thing seized; in foreclosure, the thing pledged; in realty, the property right; in divorce, the *status.* A proceeding *in rem* that leaves the *res* unaffected is an unthinkable proposition.

It is just because of this distinguishing feature that jurisdiction of the person is not essential to these proceedings. To dispense with jurisdiction over the person in action that does not act upon the *res* is not to produce a new form of proceeding *in rem;* it is simply to rear an anomalous action, in which a personal judgment may be rendered without the acquisition of jurisdiction over the person.

The decree of the chancellor brought up by this appeal did

not present this anomaly, for, by a sort of equitable fiction, it acted upon the *res* by directing that the *status* of the defendant's marriage be restored. In this court even this vestige of a proceeding *in rem* is eliminated and a purely personal decree is substituted, although there has been no personal service. I agree that the decree of the chancellor was erroneous, but I see no possible ground upon which the decree of this court can be sustained, except by the creation of the new form of action alluded to, for which I find no precedent and know of no authority.

*For affirmance*—ADAMS—1.

*To reverse and modify*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, KRUEGER, VOORHEES—9.

*For reversal*—GARRISON, VROOM—2.