PAULINE S. VON BERNUTH

*v.*

FREDERICK A. VON BERNUTH, JR

[Submitted June 8th, 1909.　Decided June 17th, 1909.]

1. Events happening after the bringing of the original suit are interjected into it by leave of the court by supplemental bill or answer, and, as to the facts set up therein, they relate to the dates of happening thereof.

2. A husband may be enjoined from maintaining in another state an action for separation instituted subsequent to the commencement in New Jersey of a suit for divorce by his wife and his appearance and answer therein, where his action is vexatious and harassing to her, and, if the two causes are allowed to proceed, will undoubtedly be embarrassing to the courts of both states, and likewise on the general ground that the cause of action was within the jurisdiction of the New Jersey court before any attempt was made to compel the wife to submit to a foreign tribunal, and where such injunction will not contravene the public policy of such other state.

On petition for divorce.　Motion for injunction.

*Mr. Thomas L. Raymond,* for the motion.

*Mr. Clinton H. Blake, Jr.* (of the New York bar), and *Messrs. Sommer, Colby & Whiting, contra.*

HOWELL, V. C.

This is a motion for an injunction to restrain the defendant from further prosecuting an action in the supreme court of New York. On October 5th, 1908, the petitioner filed her petition in this court praying for a divorce against the defendant upon the ground of desertion. This petition was subsequently amended and citation thereon was issued and returned by the sheriff not served. An attempt was then made to secure the appearance of the defendant, who was residing in the city of New York, by substituted service. The order for publication

of the substituted notice was made on November 25th, 1908, and the time for answer appointed thereby expired on January 26th, 1909. On January 20th, 1909, counsel for the defendant took an order that he have twenty days additional time in which to file an answer or demurrer to the amended petition. On February 13th, 1909, another order was made on motion of defendant's counsel extending the time to answer or demur twenty days further. On February 24th a general appearance was entered for the defendant by one of the solicitors of this court, and on the same day he filed an answer denying the allegations of the amended petition. On March 1st, 1909, he again appeared by counsel to oppose a motion for alimony, and on May 5th, 1909, he filed an amended answer and a cross-petition for an absolute divorce against the petitioner, alleging as the ground thereof her desertion of him. These are all the proceedings in the New Jersey suit which it is of importance to set out.

On March 17th, 1909, the defendant brought an action in the supreme court of New York against the petitioner by the issue of a summons out of that court'directed to the petitioner herein and entitled "action for a separation." On March 23d, 1909, that court made an order for substituted service on the petitioner; the summons, with notice of the order, was served upon her on March 24th, 1909. This required her to file her answer in the New York suit on or before April 23d, 1909. The petitioner moves upon petition and affidavits showing these facts to restrain the defendant in the New Jersey action from further prosecuting his action in New York upon the grounds—*first,* that this court having obtained jurisdiction of the matrimonial status of these parties and of the causes of action between them, is entitled to proceed to a determination of the issue, and *second,* that the action of the defendant in New York is vexatious and is designed only to hinder and harass the petitioner in her prior action in New Jersey, and to cause her the expense and labor incident to the trial of one issue in two separate actions.

The suit in this court in favor of the wife, and the defendant's appearance and answer thereto, were prior in date to the beginning of the New York action. The New Jersey suit relates to

the situation as it was at the date of its beginning. The amendment to the petition relates back to that date, and the defence, by way of answer, speaks as of the same date. At the time of the filing of the petition herein the wife claimed that she had a cause of action against her husband for a desertion which began more than two years before. The husband, by his cross-petition, claims to have cause of action against the wife for a desertion which began more than two years before the filing of the cross-petition. The evidence in each case must include all the acts and doings of both parties during the period of desertion alleged. To illustrate, on the issue made on the original petition and answer, it will be competent for the defendant to bring out matrimonial misconduct on the part of the petitioner as a bar to her action, and if the New York suit were to be tried, the petitioner, by way of defence, would be permitted to set up a matrimonial offence committed by the defendant in bar of his New York suit. The fact that the original petition and the cross-petition in this court with their respective answers are heard together makes no difference as to the evidence. The adjudication in the New Jersey suit must be made on these pleadings, and while the decree will settle the rights of the parties as of its date (*Peck* v. *Goodberlett, 109 N. Y. 180; Randel* v. *Brown, 2 How. (U. S.) 406*), no decree at all could be made unless the parties respectively had causes of action which related back to the earlier dates mentioned. Events happening after the bringing of the original suit are interjected into it by the leave of the court by supplemental bill or by supplemental answer, and when these go in the adjudication as to the facts set up therein, will relate to the dates of the happening thereof.

The defendant in his cross-petition in this suit alleges that the petitioner, without any cause or justification whatever, and without any fault on his part, wrongfully, willfully and obstinately abandoned and deserted him, and that for more than two years then last past she had willfully, obstinately and continuously deserted him, and he prays that he may be divorced from his wife and be awarded the custody of his children. In the complaint filed in New York the defendant alleges that the petitioner deserted him without any justification whatever and

with intent not to return to him, and abandoned him, and that she had been willfully and continuously absent from him for a period of more than one year last past; and he prays for a judgment of separation from the bed and board of the petitioner, and that the court may award to him the custody of his children. The basis of the action in each case is the desertion. The relief prayed for in each case is founded on the allegation of the fact of desertion. This court obtained possession of that cause of action on the day of the filing of the original petition, and the petitioner insists that for this reason this court should continue to hold the cause and should adjudicate every matter which might by the course and practice of this court be adjudicated between these parties. She likewise claims that the New York action is vexatious and is intended to hinder and harass her in the prosecution of her suit in this court. The defendant maintains that the cause is one governed by the ordinary rules and that it is entirely proper for him to have two suits pending for the same cause of action in two different states at the same time, and that the pendency of one cannot be pleaded in bar to the other. While there is nothing in the case to show that the defendant had in his mind any intent to embarrass the petitioner, his New York action has that effect. She is called upon in this court to defend a suit for an absolute divorce on the ground of desertion. She is called upon in New York to defend against a prayer for a limited divorce founded upon the same general cause of action. She is notified in the New Jersey case to defend against a desertion which is alleged to have taken place on March 19th, 1907, and in the New York case to defend against a desertion which is alleged to have taken place on July 3d, 1906. She is put to the expense and trouble of defending two actions, when the defendant might have all the relief to which he is entitled, and more than he asks for in New York, by litigating the cause pending in this court. This is undoubtedly vexatious and harassing to the petitioner, and if the two causes are allowed to proceed will undoubtedly be embarrassing to the courts of both states. If, therefore, there exists in the law any proceeding by which this vexatious action of the defendant may be prevented, such proceeding should be applied to this case.

This raises the question of the power of this court to enjoin persons who are under its jurisdiction from prosecuting actions in the courts of foreign states. Almost the final word was said upon the subject by Lord Brougham in *Portarlington* v. *Soulby* (*1834*), *3 M. & K. 104,* but the point has also received much attention in the courts of this state. In *Home Insurance Co.* v. *Howell* (*1873*), *24 N. J. Eq.* (*9 C. E. Gr.*) *238,* the facts were these: The Home Insurance Company issued policies of fire insurance to the defendant, Howell, a resident of Illinois, insuring his property in this state. The bill alleged that the defendant had procured the policies by fraud and prayed that they might be declared void and be delivered up to be canceled, and the defendant enjoined from bringing any action at law upon them. The defendant was actually served with process in this state, and so came within the jurisdiction of this court. He filed his answer, to which the complainant filed a replication. In the meantime the defendant brought a common law action in a state court in Illinois upon the policies, which action the complainant removed to the United States circuit court upon the ground of diversity of citizenship, and then moved this court for an injunction to prevent the defendant from prosecuting his common law action in the federal circuit. Chancellor Runyon granted the injunction; the argument on the point was had on a motion to dissolve it. The chancellor held the injunction upon the sole ground that this court had first obtained jurisdiction over the controversy, and was therefore entitled to hold possession of it for final disposition. Speaking of the subsequent suit in Illinois, he says: "If bringing the suit at law was not a contempt of this court under the circumstances, it surely was a proceeding which this court will discountenance." The case was cited subsequently with approval in *New Jersey Zinc Co.* v. *Franklin Iron Co., 29 N. J. Eq.* (*2 Stew.*) *422.* The next reported case is *Kempson* v. *Kempson* (*1899*), *58 N. J. Eq.* (*13 Dick.*) *94,* in which this court enjoined a husband whose residence was in New Jersey from prosecuting a suit for divorce against his wife in a foreign state, upon a satisfactory allegation of fraud, which consisted of the husband's allegation that he was a resident of such foreign state, whereas as a matter of

fact he was a resident of New Jersey. In this case the jurisdiction was exercised upon the ground of fraud, and upon the further ground that the wife was put to the trouble and expense of appearing in a foreign state to resist her husband's claim, thus making the foreign proceeding a vexatious one. In the same year occurs the case of *Hueettlinger* v. *Hueettlinger* (*1899*), *43 Atl. Rep. 574*, in which Vice-Chancellor Grey, following *Kempson* v. *Kempson*, enjoined the husband from prosecuting a suit for divorce in a foreign state, the ground being the fraudulent representation by him of his residence in such foreign state. In both these cases this court claimed jurisdiction over the defendant upon the ground that he was a *bona fide* inhabitant of this state. A similar injunction was ordered in 1899 in *Streilwolf* v. *Streitwolf, 58 N. J. Eq.* (*13 Dick.*) *563, 570*.

The next case that occupied the attention of this court is *Margarum* v. *Moon* (*1902*), *63 N. J. Eq.* (*18 Dick.*) *586*. In that case the court enjoined a resident of this state from prosecuting an attachment in a foreign state against his debtor, who was also a resident of this state, for the purpose of evading a law of this state and obtaining in the foreign jurisdiction an advantage which he would not have under the New Jersey law. The opinion is by Vice-Chancellor Reed. He cites the leading cases of *Cole* v. *Cunningham, 133 U. S. 107*, and *Keyser* v. *Rice, 47 Md. 203*, which has since been affirmed and extended by *Miller* v. *Gittings, 85 Md. 601; 60 Am. St. Rep. 352*, and places his judgment upon the ground of the unjust advantage gained by the creditor by the prosecution in the foreign state. In *Standard Roller Bearing Co.* v. *Crucible Steel Company of America, 71 N. J. Eq.* (*1 Buch.*) *61*, Chancellor Magie enjoined a proceeding in the courts of a foreign state upon the ground that such proceeding had the effect of harassing and oppressing the defendant therein. Finally, there is the case of *Bigelow* v. *Old Dominion Copper Mining and Smelting Co., 74 N. J. Eq.* (*4 Buch.*) *457*, in which Chancellor Pitney declares that the power of this court to restrain persons within the control of its process from prosecution of suits in other states is clear, but holds that upon grounds of comity it should be sparingly exercised. He denied the injunction in that case upon the ground that there the for-

eign court, being a court of general jurisdiction, had full jurisdiction of the case in question which it had acquired several years before the New Jersey action was begun.

Attention has been called to the foregoing New Jersey cases merely for the purpose of showing the grounds upon which the jurisdiction has been exercised in this state. An examination of the general subject will disclose the fact that the courts have exercised the jurisdiction in cases where the foreign action operates to the substantial detriment of the resident, not only where the claim is equitable, but also where it is legal. In *Harris* v. *Pullman, 84 Ill. 20; 25 Am. Rep. 416,* the jurisdiction was put upon the ground that it was inconsistent with interstate harmony that after a suit had been commenced in one of the states, the prosecution thereof should be controlled or interfered with by the courts of another state. In *Sandage* v. *Studabaker, 142 Ind. 148; 51 Am. St. Rep. 165,* it was put upon the ground that the foreign suit could not be instituted for the purpose of evading the laws of the state in which the plaintiff lived. In *Keyser* v. *Rice, 47 Md. 203; 28 Am. Rep. 448,* it was put upon the ground of oppression and vexation. In this case the necessity for the exercise of the jurisdiction is very clear. The facts bring it within that class of cases which permit injunctions to issue to restrain foreign actions on the ground of oppression and vexation, and likewise upon the general ground that the cause of action was within the jurisdiction of the court appealed to before any attempt was made to compel the petitioner to submit to a foreign tribunal. In *Miller* v. *Gittings, supra,* an injunction was issued in favor of a resident of Maryland against his creditor, also a resident of that state, to restrain the creditor from pursuing the debtor in the New York courts by process of arrest, a remedy which he could not have in their home state. The case is thoroughly considered and contains a valuable collection of cases on the subject. In *Dehon* v. *Foster, 4 Allen 545,* the supreme court of Massachusetts enjoined a citizen of that state from prosecuting a debtor by attachment in Pennsylvania because the effect of allowing the attachment suit to go to judgment would be to give the attaching creditor a preference over other creditors and so defeat the operation of the

Massachusetts Insolvent law. In *Hawkins* v. *Ireland, 64 Minn. 339; 58 Am. St. Rep. 534,* a citizen of Minnesota was restrained from prosecuting an action in a foreign state where it was necessary to prevent one citizen from obtaining an inequitable advantage of another. In Vermont it was declared that the jurisdiction would be exercised in that state only when the ends of justice and not the convenience of parties required it. *Bank of Bellows Falls* v. *Rutland Railroad Co., 28 Vt. 470.* In Indiana an injunction issued where the attempt was made to enforce a claim in a foreign jurisdiction in such a manner as would deprive the debtor of his exemption under the laws of Indiana: *Wilson* v. *Josephs, 107 Ind. 490.* The same doctrine was held in Ohio in *Snook* v. *Snetzer, 25 Ohio St. 516,* and in Wisconsin, *Griggs* v. *Doctor, 89 Wis. 161; 46 Am. St. Rep. 824.*

The restraint sought for by the petitioner does not impugn the policy of the State of New York, for the reason that the rule which prevails in New Jersey on this subject also prevails there. Indeed, Chancellor Runyon based his opinion in *Home Insurance Co.* v. *Howell, supra,* largely on the early New York case of *Mead* v. *Merritt (1831), 2 Paige 402.* The doctrine has since been applied in numerous cases. *Newton* v. *Bronson, 13 N. Y. 587; Gardner* v. *Ogden, 22 N. Y. 327; Stevens* v. *Central National Bank, 144 N. Y. 50.* See, also, *Kittle* v. *Kittle, 8 Daly N. Y. 72.* It therefore appears that the power which is invoked actually inheres in this court, that the present case is one in which it should be exercised, and that the exercise will not contravene the public policy of the State of New York.

An injunction will therefore issue against the defendant to restrain him from the further prosecution of his suit in the supreme court of New York against his wife for a separation.