This appeal is from an order entered in the Court of Chancery restraining appellant from instituting or prosecuting elsewhere than in the State of New Jersey any suit affecting the matrimonial status of respondent and appellant pending *Page 507 
final hearing on the matter here involved and until the further order of the Court of Chancery. The order allowed, also, counsel fee and suit money to solicitors for respondent and denied motion of appellant, defendant below, to strike the bill of complaint.
The bill is filed by the father of the wife as her guardian and seeks to restrain the husband from instituting a suit allegedly threatened by him to be brought against the wife in the courts of New York to dissolve the marital status for the cause of the wife's incurable insanity which developed in 1937 while the parties were domiciled in New Jersey and which mental disorder has persisted for more than five years.
It is alleged in the bill that the matrimonial domicile of the parties always has been and is in this state; that in 1938 the wife, with the approval of the husband, went to Iowa seeking rest and cure for her ailment; that she returned to New Jersey and in 1939 went again to Iowa, with her husband's consent, and has been hospitalized in the west since that time. The husband has paid for medical care and attention rendered the wife.
It is alleged also that upon their marriage the parties took up residence in East Orange, and later in West Orange, Essex County, and that in 1941 the husband purchased a farm in or near Eatontown, Monmouth County, where he lived "at least a large part of the year." The place of business of the husband is in the City of Newark. The bill states further that the husband moved to New York City in 1942 and that he threatens to commence a proceeding for the dissolution of the marital status in the courts of New York for the reason above stated and concludes that the institution of such suit in New York would be a fraud upon the wife and upon the courts of that state and that any allegation which may be made by the husband to the effect that his residence is in the State of New York will be false and fraudulent.
It is admitted by the husband that while residing in New Jersey he formed the purpose of obtaining a divorce in order that he might subsequently be free to remarry should he so desire and that he consulted his New Jersey counsel and was advised that insanity was a recognized ground for divorce *Page 508 
both in New York and Nevada. He admits that he preferred the Nevada forum. He claims that the wife's father and brother were agreeable to the idea of a divorce proceeding but wanted it brought in Iowa, where they reside, to which he objected only because he had been advised that insanity was not a ground for divorce in that state. He further says that when the wife's family objected to a Nevada divorce, he abandoned the idea of instituting suit in that state, particularly since he was already planning to move to New York, where he could, if he so decided, proceed with suit for the desired divorce.
In July, 1942, Mr. Peff rented an apartment in New York City where he and the two minor children born of the marriage have resided since September, 1942.
In his affidavit the husband recites in some detail the factual history of his domestic life. He advises that upon determining to make New York City his permanent residence he withdrew from membership in several New Jersey clubs and from other social affiliations here. He stated that the major part of his business contacts and associations were in New York City and that the metropolis afforded him wider and fuller opportunity to engage in the social, cultural and political enterprises in which he had been always interested. He suggests also his desire that his children should be afforded educational opportunities there available which might otherwise be lost to them.
On February 11th, 1943, New York counsel for the husband wrote the wife's father respecting the procurement of a divorce in Iowa upon certain terms and conditions in that letter outlined. That letter makes it clear that if the proposed terms be rejected, the husband would consider himself free "to proceed with such steps as may be available to him to dissolve the marriage." On March 4th, 1943, counsel against wrote to the wife's father that if the husband's proposals were not acceded to by March 9th, 1943, suit would be commenced that day in New York. Such suit was not, in fact, commenced and its later institution was prevented by the injunctive order of our Court of Chancery here appealed from. *Page 509 
The theory and charge of complainant's bill is that the matrimonial domicile is in this state; that the threatened divorce action in New York would be in fraud of the New York courts and to the injury of the wife; that the husband's residence in New York was not taken in good faith but for the purpose of fraudulently obtaining a divorce for a cause which arose here but not recognized by our law as ground for such action. Therefore, the controlling question is one of the good faith of the husband's New York residence.
A motion made on behalf of the husband to strike the bill was denied. Motion on behalf of complainant for restraint pendentelite against the institution of the threatened suit in New York was granted.
On the main question the argument made for appellant is that the mere institution of a suit for divorce against the wife in a foreign jurisdiction could not operate to the irreparable injury of the wife; that in the situation here presented it cannot be determined that a suit to be instituted by the husband in the future in a foreign jurisdiction would be an illegal or unconscionable act; that the proofs here presented give rise to the gravest doubt that the husband was, at the time of the institution of the instant action, domiciled in New Jersey, but to the contrary it is conclusively shown that he was then domiciled in New York and has been so domiciled since that time; that a prima facie case has not been made out on behalf of the wife and the issuance of the preliminary injunction was unjustified. Appellant urges, however, "that the matter be now ultimately disposed of on the underlying meritorious issue of domicile * * *."
We are satisfied that the disposition made by the advisory master was proper.
The motion to strike constructively admitted all the well pleaded allegations of the bill. Enough stands so admitted to justify the retention of the bill until final hearing.
We think also that the preliminary restraint was properly imposed. Equity's preventive jurisdiction, though to be used sparingly, may be invoked to arrest a threatened fraud as here alleged. Kempson v. Kempson, 63 N.J. Eq. 783, 785. The proofs reveal the husband's determination to sue for *Page 510 
divorce. His negotiations concerning the forum, Nevada, Iowa or New York, indicate a willingness to sue anywhere in which the purpose might be accomplished. It is clear that he never had the intention of establishing a permanent residence in Nevada or Iowa. Thus there is cast great doubt on his present claim that he transferred his residence to New York with the intention of remaining there permanently. The facts strongly point to the contrary and this question can best be resolved at a final hearing. Glacken v. Glacken, 132 N.J. Eq. 304, 307.
The allowance of a counsel fee of $1,000 and suit money of $100 is not in the circumstances here present, and considering the defendant's means, improper.
The motion of respondent that appellant be required to pay for printing incident to this appeal is granted. Respondent's motion for counsel fee for services on this appeal will be held abiding the event.
The order under review is affirmed.
For affirmance — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, JJ. 12.
 For reversal — COLIE, THOMPSON, DILL, JJ. 3. *Page 511