FREDA IPPOLITO, PLAINTIFF-RESPONDENT, v. FRANK IPPOLITO, THOMAS IPPOLITO ET AL., DEFENDANTS-APPELLANTS.

Argued January 9, 1950—Decided February 6, 1950.

*Mr. Archibald Kreiger* argued the cause for the appellants, Frank Ippolito and Thomas Ippolito. *Mr. A. Leon Kohlreiter,* attorney for defendant, Frank Ippolito.

*Mr. Martin Kimmel* argued the cause for the respondent (*Messrs. Kimmel & Kimmel,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is an appeal from an order of the Superior Court, Chancery Division, in a matrimonial matter which granted, at the suit of the wife, injunctive relief against the prosecution by the husband of a divorce action in the State of Nevada and permitted seizure of the husband's property located in this State. The case has been certified on our own motion.

The plaintiff, Freda Ippolito, and the defendant, Frank Ippolito, were married in Paterson, New Jersey, on March 29, 1933, where they continued to live together until October, 1948, when the defendant husband moved to his father's home in the same city. The plaintiff continued to live at the marital residence in Paterson with the two children of the marriage. The defendant husband owned and operated a milk route in Paterson and West Paterson, New Jersey. In June, 1949, the husband left New Jersey and went to Nevada, where,

on August 12, 1949, he instituted an action for divorce on the grounds of extreme cruelty. The summons and complaint were served on the plaintiff on August 15, 1949, in Paterson, by the Sheriff of Passaic County, New Jersey, apparently under some provision in the Nevada law for service upon non-resident defendants, although nothing appears in the briefs or appendix disclosing such a provision. On August 25, 1949, the plaintiff filed a complaint with the Superior Court of New Jersey, Chancery Division, seeking an order restraining the prosecution of the Nevada divorce action and the sequestration of the defendant husband's property located in this State, including a bond and mortgage executed by the defendants, Philip Venticinque and Mary Frances Venticinque to the said defendant husband which mortgage had been assigned by the latter to his father, the defendant Thomas Ippolito, on December 31, 1948.

The plaintiff charged that the residence of her husband in Nevada was not *bona fide,* that his divorce action in Nevada was an effort to perpetrate a fraud on the Nevada Court and the plaintiff; that he was still operating, through his agent, the milk route in Paterson and West Paterson, New Jersey; that two motor vehicles owned by the defendant husband were being used in the operation of said milk route and that the above mortgage assignment was fraudulent. The complaint was verified by the plaintiff's affidavit and in part, by her brother's affidavit. A subsequently filed affidavit of the petitioner stated that her husband had left for Reno, Nevada, on June 26, 1949, in company with an alleged paramour and that both the husband and the alleged paramour had retained the same attorney for the institution of divorce proceedings in Nevada and from which affidavit it appears that the Nevada proceedings were instituted by the defendant husband within 43 days from the date of his departure from New Jersey.

Pursuant to the verified complaint an order was made on August 25, 1949, restraining the defendant husband from proceeding with his divorce action in Nevada, or elsewhere than in New Jersey, awarding a writ of sequestration against

the defendant husband's property in this State and restraining the defendant, Thomas Ippolito, from assigning the bond and mortgage, assigned by the defendant husband to him on December 31, 1948, and from collecting principal or interest thereon until the further order of the court. The mortgagors were restrained from paying any part of the mortgage principal or interest thereon to the defendants, Frank Ippolito and Thomas Ippolito. A writ of sequestration issued and was executed pursuant to the order. The defendant, Thomas Ippolito, moved for the dissolution of the restraints issued against him and for a vacation of the writ of sequestration. The motion was denied on September 23, 1949. A hearing on the order to show cause of August 25, 1949, was held on September 30, 1949. The defendant, Frank Ippolito, having entered a general appearance by his attorney, had filed an affidavit to the effect that his residence in Nevada was intended to be permanent, that he was operating a luncheonette in that state, that he had been paying the sum of $41 each week for the support of his wife and children and that he intended to continue such payments. The defendant, Thomas Ippolito, had filed an affidavit to the effect that the assignment of the mortgage in question had been made for a valuable consideration. On October 13, 1949, the Chancery Division having considered the affidavits and the arguments of counsel, ordered that the restraints previously ordered against all the defendants be continued until the further order of the Court and denied a renewed motion to dissolve the restraints against the defendant, Thomas Ippolito.

The defendants, Frank Ippolito and Thomas Ippolito, have jointly appealed from the last mentioned order.

■ The first point advanced by the defendants relates to the propriety of the *ex parte* preliminary restraints. *Rule* 3:65-2 provides, in part, that "No temporary restraining order shall be granted without notice to the adverse party or his consent unless it appears from specific facts shown by affidavit or by the verified complaint that immediate, substantial and irreparable injury, loss or damage will probably result to the applicant before notice can be served and a hear-

ing had thereon. \* \* \*" The defendants contend that the plaintiff was receiving the sum of $41 each week for the support of herself and the children of the marriage and since she had no claim for alimony or support there was no possible injury which could have resulted to the plaintiff if the restraints had not been granted. We do not agree with this contention. The power of courts having equity jurisdiction to enjoin the prosecution of an action in a foreign jurisdiction by a resident of the forum state against another such resident has been liberally exercised to restrain the prosecution by such a resident of a divorce action in another jurisdiction. Some of the usual circumstances in which equitable interference is so exercised include situations where the institution or prosecution of the suit in the foreign jurisdiction is in evasion of the laws of the common domicile; where the attempted establishment by the plaintiff in the foreign divorce suit of a residence or domicile in the foreign jurisdiction is not *bona fide* but is simulated for the purposes of divorce and in fraud of the jurisdiction of the foreign court and of the rights of the plaintiff in the injunction suit; where the prosecution of such foreign suit is vexatious to the plaintiff in the injunction suit and will cause him or her great and unnecessary hardship and inconvenience in defending it, or where the foreign suit will prejudicially affect the property rights of the plaintiff in the injunction suit and unjustly subject him or her to the indignities of a divorce not justified by the laws of the common domicile. See Annotation and cases cited in 128 *A. L. R.* 1467 *et seq.*

The affidavits of the plaintiff in the instant proceeding make out a strong *prima facie* case against the *bona fides* of the defendant husband's residence in Nevada. Our courts have consistently granted injunctive relief to protect the marital status of residents of this state against migratory divorces. *Kempson v. Kempson,* 58 *N. J. Eq.* 94 (*Ch.* 1899); mod., 63 *N. J. Eq.* 783 (*E. & A.* 1902), is a leading case on this subject in New Jersey. See Annotation, 128 *A. L. R.* 1467 *el seq.* In that case a preliminary injunction was issued at the suit of a wife restraining her husband from prosecuting

a divorce in North Dakota, the gravamen of the wife's complaint being that the husband's pretended residence in North Dakota for only a few months was not *bona fide* and that the action so instituted by the husband amounted to a fraud upon the court of North Dakota and also upon the wife. The rationale of the opinion in the *Kempson case, supra,* is that a wife, under such circumstances, should not be put to the hardship of any of the other alternatives open to her in such a situation, such as (a) incurring the expense and difficulty of appearing generally in the foreign jurisdiction to resist the action, (b) incurring the inconvenience and expense incident to appearing specially in the foreign court to contest its jurisdiction, or (c) not appearing for any purpose in the foreign jurisdiction and subsequently seeking to attack the validity of the foreign decree by a suit against her husband who may avoid personal service in this jurisdiction. The philosophy of the *Kempson case, supra,* has been followed by our courts on numerous occasions. See *Von Bernuth v. Von Bernuth,* 76 *N. J. Eq.* 177 (*Ch.* 1909); *Perlman v. Perlman,* 113 *N. J. Eq.* 3 (*Ch.* 1933); *Knapp v. Knapp,* 12 *N. J. Misc.* 599 (*Ch.* 1934); *Di Brigida v. Di Brigida,* 116 *N. J. Eq.* 208 (*E. & A.* 1934), and was followed by the Maine Supreme Judicial Court in *Usen v. Usen,* 136 *Me.* 480, 13 *A.* 2d 738 (1940). The latter case appears to be a leading case on the subject and is fully reported and commented upon in 128 *A. L. R.* 1449 *et seq.* Nor is it essential that any relief other than injunctive relief against the prosecution of the foreign suit for divorce be sought in such proceedings. *Kempson v. Kempson, supra; Perlman v. Perlman, supra; Gross v. Gross,* 13 *N. J. Misc.* 499 (*Ch.* 1935); *Usen v. Usen, supra.* The foregoing cases are ample authority for the proposition that a foreign divorce action under circumstances as alleged in the affidavits herein creates a sufficient jeopardy to the marital status of residents of this State as to warrant the issuance of a temporary restraining order under *Rule* 3 :65–2 on the basis that "immediate, substantial and irreparable injury, loss or damage will probably result to the applicant before notice can be served and a hearing had thereon."

The defendants contend, however, that since, on the return day of the order to show cause, the plaintiff's claim that her husband's residence in Nevada was false and fraudulent was disputed by the husband's affidavit, the restraints should have been discharged. While the contested issue of domicile cannot be finally determined on *ex parte* proofs, there was a sufficient *prima facie* case made out by the plaintiff at the preliminary hearing, to justify the enjoining of further prosecution of the Nevada divorce action, pending final hearing. *Glacken v. Glacken*, 132 *N. J. Eq.* 304 (*E. & A.* 1942).

■ The next point raised by the defendants is directed to the authority of the Court to issue the writ of sequestration. It is urged that while sequestration could issue out of the former Court of Chancery under *R. S.* 2:29–88 to 109 inclusive, that statute was repealed by *R. S.* 2:42–130 (*L.* 1948, *c.* 358, *p.* 1445, *par.* 45). The statute referred to would have furnished no basis for relief in the present case, however, if it were still effective. That statute permitted sequestration in cases in which a money decree was sought. No money decree is sought in the present action nor is there anything in the pleadings or orders to indicate that the issuance of the writ was sought or allowed under any statutory authority. Courts exercising equity jurisdiction have inherent power to issue writs of sequestration to preserve property pending hearing and to enforce compliance with orders and judgments whenever it is deemed necessary. This inherent prerogative was recognized in *R. S.* 2:29–88, now repealed, in the following language: "* * * nor shall it (the statute) be so construed as to circumscribe or impair any power or jurisdiction and possessed by the court of chancery." In *Vol. 2, Kocher and Trier, New Jersey Chancery Practice and Precedents* (1924), *p.* 1214, § 1709, it is said, in construing the foregoing statute that it "* * * provides additional remedies * * *." The issuance of the writ by equity courts without any statutory authority has long been recognized. See 47 *Am. Jur., Sequestration, p.* 695 *et seq.*, 57 *C. J., p.* 182, § 4, 38 *A. L. R.* 1084.

The inherent authority for the issuance of the writ was judicially declared in *Maloney v. Maloney*, 12 *N. J. Misc.* 397 (*Ch.* 1934), in which some of the earlier cases and authorities are cited.

Since the issuance of the writ in the instant case is to preserve the property pending hearing and to enforce compliance with the orders of the court, the repeal of *R. S.* 2:29–88 to 109, inclusive, is of no consequence. The inclusion of a rule in our Rules of Civil Practice, effective September 15, 1948, the same date *R. S.* 2:29–88 to 109 inclusive was repealed, was a clear expression that the writ of sequestration was to be retained in our practice for some purposes. *Rule* 3:72–6 provides that "Writs of sequestration or proceedings in the nature thereof are superseded except to enforce a judgment or order of the court." The defendants contend that the foregoing rule applies only to sequestration as a remedy for final process of execution after judgment. Since, historically, the writ issued as original as well as final process it would appear that the "order of the court" as used in *Rule* 3:72–6, must necessarily be construed as not being limited to a final order of the court. Further impetus is given to such construction by reason of the fact that the rule uses the disjunctive "or" in referring to the enforcement of a "judgment *or* order of the court."

The defendant husband urges that since he has entered a general appearance by his attorney in the present proceedings the purpose of the seizure has been fulfilled. This point, while not argued below, has been considered and found to be without merit. The defendant husband appears to be still physically without the boundaries of this State and it is essential that his property remain *in custodia legis* if the writ of sequestration is to be effective for the purpose for which it was issued.

The final point to be considered relates to the legality of the sequestration of the bond and mortgage assigned by the defendant husband to his father, the defendant Thomas Ippolito. The plaintiff claimed that the assignment was fraudulent and that equitably it was still the property of the de-

fendant husband. While it has been held that a wife's right to set aside a transfer by her husband as being fraudulent as to her depends upon her status as a creditor, *Clark v. Clark*, 13 *N. J. Misc.* 49 (*Ch.* 1935), our present *Rule* 3:18–2 provides that:

"Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, then, except as provided by law relative to claims secured by a mortgage, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."

The defendants urge, however, that since the plaintiff is not making any claim for money in the instant proceedings, *Rule* 3:18–2 is inapplicable. While it is noted that the plaintiff is seeking as incidental relief the payment by the defendant husband of counsel fees and costs of the proceedings, we prefer to base our decision affirming the action of the Chancery Division in this particular on a broader principle. The primary ground urged by the plaintiff, as appears from her complaint, for sequestration of the bond and mortgage is that the assignment thereof was fraudulently made by the defendant husband "to defeat the enforcement of the jurisdiction of the State of New Jersey over the matrimonial status existing between the plaintiff and the defendant Frank Ippolito." Marriage is a status subject to the social control of the State. We conceive that it is for this basic reason that where the *situs* of the marital *res* is in New Jersey our courts have been liberal in allowing injunctive relief against the prosecution of fraudulent suits for divorce in foreign jurisdictions. In such cases, the same liberality should be exercised in granting such additional preliminary relief as may be necessary to effectuate the purpose for which the injunction is granted and to insure a compliance with such orders as may be made in the premises. In the instant case the *bona fides* of the mortgage assignment is not clear and the purpose of the sequestration is merely to hold the property *in custodia legis* until a final hearing can be had disposing of the issues on their merits. Such final hearing should be had without any unnecessary delay.

The order is affirmed and it is directed that final hearing in the matter be scheduled with all convenient speed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.