28 N.J. Super. 446 (1953)
101 A.2d 77
SUELLA STULTZ, PLAINTIFF-RESPONDENT,
v.
LOUIS STULTZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1953.
Decided November 30, 1953.
*448 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Benjamin I. Kantor argued the cause for appellant (Messrs. Karkus & Kantor, attorneys).
Mr. John Warren, Jr., argued the cause for respondent (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The parties to this litigation are of the approximate age of three score years and ten. They were married on September 19, 1906. Four sons were born of the marriage. Discord terminated the marital cohabitation of the parties in August 1931 since which time they have had separate abodes.
Mr. Stultz was initially engaged in the manufacture of artificial ice in Keyport, New Jersey, which successful enterprise he sold in 1927 to the Seaboard Ice Company. He then conducted in Keyport a coal and feed business which was incorporated in New Jersey in 1930 under the title Louis Stultz, Jr., Inc. The company, enlarging its trade to include the sale of fuel oil and oil burners, continues in business under the management of the four sons.
It seems evident that Mr. Stultz has been regarded as a sagacious businessman. During a span of 31 years he served as a director and as chairman of the board of the Peoples National Bank of Keyport, and during a period of 22 years as a director of the Borough Building and Loan Association of Keyport and Matawan, New Jersey, of which he was also an officer for 12 years. He was a member of the Keyport Yacht Club. To him boating and fishing have been recreational pleasures. We allude to those activities of Mr. Stultz because we shall have occasion to refer to them again in our review of this case.
Let us turn over the next leaf of the story and speak of the situation Mrs. Stultz has occupied. She has been supported and maintained ever since the separation in 1931 by Mr. Stultz. She has continued to occupy the residential *449 property at No. 155 Division Street, Keyport. Indeed, in 1933 Mr. Stultz vested in her by deed a life estate in that property with remainder in the four sons. Her practice was to forward the bill for any indebtedness she contracted and wished Mr. Stultz to pay, to his business office. All such have always been paid by Mr. Stultz. She has regularly received from him an allowance of $30 a week which some time ago was increased to $35. During the more than a score of years that have elapsed since 1931 it is not apparent that she has complained to Mr. Stultz or to her sons of a lack of adequate support and maintenance. Throughout those years Mr. and Mrs. Stultz have never conversed.
Mr. Stultz resolved to retire from his business routine and on April 5, 1950 transferred sufficient shares of stock in the corporation to vest in his four sons the ownership of 94 shares of the 100 shares of capital stock of the corporation, retaining only six shares for himself. On April 5, 1950 in a contemporaneous agreement with his sons reciting that in making the assignment of stock he desires to make provision for the continued support and maintenance of his wife, the sons contractually obligate themselves to pay Mrs. Stultz "the sum of Thirty-five ($35.00) Dollars per week for and during" her natural life "for her maintenance and support," and additionally to pay "all amounts due on account of medical, hospital or professional nursing expenses that may be necessary in the event of any illness" of Mrs. Stultz, and furthermore to pay "all amounts due for taxes, assessments, heat, water charges, telephone charges and insurance premiums on both real and personal property, and all amounts due on account of repairs and improvements to the real property of" Mrs. Stultz "at No. 155 Division Street" in Keyport. Thus Mr. Stultz caused Mrs. Stultz' bread to be buttered on both sides. At the trial Mrs. Stultz frankly acknowledged that the sons had never declined to pay any bill that she had presented to them.
Early in December 1951 Mr. Stultz visited his brother and sister-in-law who resided in St. Petersburg, Florida. Both the brother and his wife were in an incapacitating state of *450 health and in financial need. They owned the home in which they were residing. Having remained in Florida for some few weeks, Mr. Stultz resolved to acquire the ownership of the home subject to a life estate therein to be retained by his brother and sister-in-law and make the house in St. Petersburg, which was adequate to accommodate all of them, his permanent residence. The conveyance bears date February 5, 1952.
The uninterrupted tranquility in the solitary relations between Mr. and Mrs. Stultz continued as theretofore until in May 1952 when for some reason Mr. Stultz commenced an action for divorce on the ground of extreme cruelty in the Circuit Court of Pinellas County, Florida, and formal notice of its institution came to Mrs. Stultz. She caused an answer to be filed in the cause on her behalf.
On August 1, 1952 Mrs. Stultz instituted the present action in this court praying judgment: (1) that the defendant be enjoined from the further prosecution of the divorce action in the Florida court or any other action for the dissolution of the marriage elsewhere than in the State of New Jersey, and (2) that the defendant be compelled to provide her with suitable support and maintenance and incidentally fees for her counsel. The defendant was served personally with process in this State. Judgment was rendered in her favor on both counts and a counsel fee of $1,000 awarded. We review the judgment on the defendant's appeal.
It will be expedient for us first to express our opinion concerning the count for maintenance. This alleged cause of action was unwarranted, unproved, and profitless. In the suit of a wife for separate maintenance under the statute there must be proof that the husband has refused or neglected to maintain and provide for her. R.S. 2:50-39, as amended in 1948, now N.J.S. 2A:34-24; Dinnebeil v. Dinnebeil, 109 N.J. Eq. 594 (E. & A. 1932).
The only deprivation of which the plaintiff was mindful at the trial was her lack of automotive local transportation *451 which occasioned her dependence upon taxicabs. In contrast are the impressive remarks of the defendant:
"May I make a statement at this time, Judge? I think it will eliminate a lot of questions. It was never my purpose, intent or desire to deprive Mrs. Stultz of any of the common comforts of life that I would expect to have myself and I have lived in the belief that Mrs. Stultz was amply taken care of. If she hadn't been, all she had to do was to say so. She has never been deprived of one penny. She has never presented a bill at the office that wasn't promptly paid for and it was my understanding and my belief that she had been presenting these different bills, which she claimed she had paid, but she didn't have to pay and I didn't want her to pay. I want her to have all the comforts of the life that I would desire for myself. And there was no intention at any time to deprive her of that, and it isn't at this time."
We cannot discover in the transcript of the testimony any proof to sustain the allegation that the defendant has refused or neglected to provide support for his wife and this leads us to conclude that there was no justifiable reason for the compulsory judgment. Therefore in that respect the judgment is reversed.
There remains for consideration the branch of the judgment restraining the defendant from the further prosecution of his pending action for divorce in the Florida court or similar proceedings elsewhere than in New Jersey.
There is no doubt of the power of our court of equity jurisdiction to enjoin in certain circumstances at the suit of a resident spouse the prosecution of an action for divorce by the other spouse in a foreign jurisdiction. Kempson v. Kempson, 58 N.J. Eq. 94 (Ch. 1899), modified 63 N.J. Eq. 783 (E. & A. 1902); Ippolito v. Ippolito, 3 N.J. 561 (1950).
The existence of the power to enjoin in personam is indubitable, but the propriety of its exercise depends upon the circumstances of the particular case. Perhaps the most common cause for the injunctive relief is present where the asserted residence of the plaintiff in the foreign jurisdiction is not bona fide but is fraudulently simulated for the purpose of prosecuting the divorce action.
*452 Such a factual basis for the granting of the restraint may not appear to be sustained by the evidence adduced in the present case. Here, the husband manifested an apparent intention to remain indefinitely, if not permanently, in St. Petersburg by resigning as an officer and director of the bank and building and loan association at Keyport, terminating his membership in the Keyport Yacht Club, notifying the clerk of the Borough of Keyport of his change of voting residence, procuring an automobile, driver's license and car registration at St. Petersburg, joining the city's Chamber of Commerce, and purchasing a home there. True, more abundant proof of animus manendi would not ordinarily be available. Was he familiar with the factual pattern in Smith v. Smith, 364 Pa. 1, 70 A.2d 630, 633 (Sup. Ct. 1950)?
However, we ponder, as we presume did the trial judge, whether the defendant having separated from his wife in 1931 is unfeignedly and in guileless conscience 20 years later so promptly instituting in a distant jurisdiction an action against her for divorce on a ground so stagnant. That complexion of the defendant's conduct does not escape the eye of equity. We realize that he possessed the right to institute his action in Clackamas County, Oregon, had such been his chosen residence. There is a type of human behavior which appears superficially correct but is intrinsically unjust.
Where there is, as here, cause to mistrust the bona fides of the prosecution of the action abroad, equity may recognize considerations of the hardship, inconvenience, or expense to be visited upon the resident party in defending the action in the remote foreign jurisdiction. Huettinger v. Huettinger, 43 A. 574 (Ch. 1899); Kempson v. Kempson, supra; Von Bernuth v. Von Bernuth, 76 N.J. Eq. 177 (Ch. 1909); Ippolito v. Ippolito, supra; O'Loughlin v. O'Loughlin, 6 N.J. 170 (1951).
True, the plaintiff's counsel in New Jersey conceived it to be precautious to cause an appearance to be filed on her behalf in the Florida action. The import of the appearance or pleading is not exhibited by the record before us. She could not then have definitely known of the eventual opportunity *453 to serve her husband with process in this State. This defensive act on behalf of the plaintiff, argues counsel for the defendant herein, evidences the voluntary submission of the plaintiff's defense to the foreign tribunal where complete justice can be achieved. We may remark that it is also indicative of the plaintiff's sincere desire to oppose a dissolution of the marriage.
It is evident that the plaintiff is domiciled in this State. The marriage occurred here. The cause of action alleged in the Florida action arose and is cognizable in this jurisdiction. The witnesses of both parties are doubtless residents of New Jersey. It is the expressed intention of the defendant to spend the summer months of the year in this State, where he continues his enjoyment of boating and fishing. Process in this action was served personally upon the defendant in this State. Certainly to oblige this plaintiff, at her age, in her state of ill health, in her dependent and limited financial situation, and after the lapse of such a span of time since the separation of the parties to incur the effort, inconvenience, and expense of resisting the defendant's belated suit in Florida would be to her a vexatious and oppressive subjection. Anent the basic philosophy, see Shepherd v. Ward, 5 N.J. 92, 111 (1950).
"* * * Ordinarily, a citizen of a state may go abroad for such remedies and relief as may be available in the jurisdiction of his choice; but a court of equity has the undoubted power to enjoin those subject to its jurisdiction from seeking relief in a foreign proceeding which would not be compatible with equity and right conscience. The restraint is directed against the litigants, not the foreign jurisdiction. It constitutes an exercise of equity's jurisdiction in personam operative upon those within the reach of the court's process. The remedy of injunction acts in personam." O'Loughlin v. O'Loughlin, supra.
It is nevertheless argumentatively proposed that the injunction offends fundamental principles of law in that once a husband who has separated from his wife in this State, leaving her here, and has established a bona fide residence in however a distant foreign jurisdiction, he cannot be enjoined in personam by a court of this State from the prosecution *454 of an action for divorce in the latter jurisdiction in the absence of proof that he is actuated by an evasive and insidious intent. But we pause to ask  an evasive and insidious intent to do what?
In the present case the court was concerned in the aspect of all of the events of the past with the intent that motivated the defendant to institute and prosecute an action in Florida to dissolve the marriage, and only incidentally with the reason for his change of residence. It is the institution of the divorce action in view of the circumstances that evidently appeared to the trial judge to be guileful and an insidious undertaking to entrap the plaintiff. Assuredly the evidence is reasonably productive of that inference of fact.
Viewing the circumstances of the present case in our appellate capacity, we are not persuaded that the granting of the injunctive relief constitutes reversible error. The result is conspicuously just and equitable.
The adjudication that the defendant had refused and neglected to provide for the support and maintenance of the plaintiff is reversed. We deem the allowance of a counsel fee of $1,000 to be rather exorbitant. It is therefore reduced to $500. The judgment in all other respects is affirmed.
FRANCIS, J.A.D. (dissenting).
I agree with the view of the majority that the judgment awarding separate maintenance to respondent should be reversed. As Judge Jayne says, that aspect of the action was "unwarranted, unproved and profitless." In fact, the award in the trial court was less than Mrs. Stultz had been receiving, and continues to be entitled to receive, under a lifetime maintenance arrangement established by her husband.
However, I must record my conviction that the injunction restraining the prosecution of appellant's pending action for divorce in Florida should not be sustained.
We are in agreement that Stultz established a bona fide residence in Florida and thus became a citizen of that state. As such citizen, he has the undoubted right to seek relief on any cause of action which is cognizable in the courts *455 there  including divorce. And in this connection the fact, if it be a fact, that one reason for moving to Florida was to take advantage of its divorce laws, can have no adverse impact upon his right to a constitutionally effective and universally impregnable judgment. We are bound by the established law to this effect. Peff v. Peff, 2 N.J. 513 (1949).
But my colleagues take the view that since the Superior Court acquired in personam jurisdiction over Stultz in the maintenance and injunction action and since there is "cause to mistrust the bona fides of the prosecution of the action abroad, equity may recognize considerations of the hardship, inconvenience, or expense to be visited upon the resident party in defending the action in the remote foreign jurisdiction," and so may enjoin permanently the foreign citizen from pursuing his remedy in the already pending action in his home state. Here emphasis must be cast upon the fact that the mistrust referred to is not of the legitimacy of his residence but of the morality or equity of suing his wife in Florida in the circumstances presented.
In support of the propriety of use of the injunctive process, Huettinger v. Huettinger, 43 A. 574 (Ch. 1899); Kempson v. Kempson, 58 N.J. Eq. 94 (Ch. 1899), modified 63 N.J. Eq. 783 (E. & A. 1902); Ippolito v. Ippolito, 3 N.J. 561 (1950); Von Bernuth v. Von Bernuth, 76 N.J. Eq. 177 (Ch. 1909), and O'Loughlin v. O'Loughlin, 6 N.J. 170 (1951), are relied upon.
The first three of these cases involve pretended foreign residences by our own citizens, where the power to enjoin is beyond question. In the Von Bernuth case, the wife, a New Jersey resident, sued her husband, a domiciliary of New York, in our court for a divorce on the ground of desertion. The husband entered an appearance and filed a cross-petition seeking the same relief. Subsequently, the husband instituted an action for separation in New York. On application therefor, the then Court of Chancery issued an injunction restraining him from furthering the suit. To justify the order, Vice-Chancellor Howell pointed out that the suit here *456 was instituted first, that the husband had submitted to the jurisdiction and that the wife was being called upon to defend a claim for absolute divorce in New Jersey and a separation action in New York, both arising out of the same basic facts. Among other things he said:
"* * * The facts bring it within that class of cases which permit injunctions to issue to restrain foreign actions on the ground of oppression and vexation, and likewise upon the general ground that the cause of action was within the jurisdiction of the court appealed to before any attempt was made to compel the petitioner to submit to a foreign tribunal." (p. 183)
The contrast with our situation is sharply outlined. Here the Florida proceeding was prior in time and the wife, although served by publication, voluntarily entered an appearance there on advice of counsel. True, it is said that the appearance was made to attack the character of the residence. But this is a general appearance. (Hubschman v. Hubschman, 140 N.J. Eq. 284 (E. & A. 1947).
In the O'Loughlin action, a divorce judgment had already been obtained in Nevada; its validity was not in dispute and the issue involved present arrears of alimony and future supervision over alimony payments. Both parties were before the court; neither one was a resident of Nevada at the time and complete relief to the wife, a New York resident, could not be obtained on the issues which were within the pleadings in the Nevada court. This special equity was considered justification for an injunction against the husband, a New Jersey resident, proscribing the continued prosecution of the Nevada suit. The Supreme Court said:
"* * * But though the power [to enjoin] is unquestionable, its exercise is often one of great delicacy; it is a remedy which is sparingly used, to serve the ends of justice in the particular case. Considerations of comity forbid interference with the prosecution of a proceeding in a foreign jurisdiction capable of affording adequate relief and doing complete justice, unless there be a special equity sufficient in conscience to stay the hand of the defendant. The question is not the existence of the power but the propriety of its exercise in the given case. The rule of comity is grounded *457 in the policy of avoiding conflicts of jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of the issue has precedence." (p. 179)
In connection with both the Von Bernuth and O'Loughlin cases, it must be noticed also that the restraint was ordered as an incident of, as an aid to, and to avoid interference with the prosecution of a suit then pending in New Jersey, in which suit complete relief could be administered between the parties. Although Mrs. Stultz sued for separate maintenance and for an injunction against the Florida divorce proceeding, we have concluded that she has no cause of action for support. Consequently nothing remains but the injunction application. While suit by a local resident seeking injunctive relief alone against the continued prosecution of a matrimonial action in a sister state has been sustained where simulated residence is involved (Gross v. Gross, 13 N.J. Misc. 499 (Ch. 1935), research has revealed no case in New Jersey where such relief has been granted against a non-resident citizen of another state. And since the two Williams cases, which crystallized the law as to the effect of foreign decrees of divorce under the full faith and credit clause of the United States Constitution, there would appear to be no justification on facts such as are present here to enjoin Stultz' action in Florida. U.S. Const., Art. IV, § 1; Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942); second case, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1944).
Recapitulating the factual setting in our case: Stultz is a bona fide resident and citizen of Florida and entitled to access to its courts; his suit there predated any proceedings in New Jersey; Mrs. Stultz voluntarily submitted to the jurisdiction of the Florida court; and complete relief can be had by both parties in that proceeding. Under the circumstances, considerations of balance of convenience in interstate relations are opposed to the purposed interference with the foreign action. And in my judgment such an assault upon interstate amenity is not justified. Brown v. Brown, *458 28 N.J. Super. 165 (App. Div., 1953); Smith v. Smith, 364 Pa. 1, 70 A.2d 630 (1950); Bigelow v. Old Dominion Copper Co., 74 N.J. Eq. 457, 473 et seq. (Ch. 1908).
Accordingly, I feel that there should be a complete reversal of the judgment.