NANCY B. WHITE, PLAINTIFF, v. EDWARD WHITE, IV, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided May 12, 1954.

*Mr. Ervin S. Fulop,* attorney for the plaintiff.

*Mr. Nathan Reibel,* attorney for the claimant, Wrifford White.

TOMASULO, J. S. C. Plaintiff and defendant were married in 1935 and lived together as man and wife until the defendant's first physical separation of the plaintiff in 1951, just prior to the birth of their second child. On this occasion he withdrew himself from their bedroom because as plaintiff testified, defendant "found me distasteful, and he was going to sleep in the back." Defendant continued to support his family while residing with them until March 7, 1953 when he deserted the plaintiff and their two children while she was out for the day, leaving a note for the plaintiff which reads as follows:

"(1) Joint checking account has been closed out.
(2) All store 'charge accounts' have been closed out.
(3) Have arranged for all. necessary household bills to be sent to 47 Worth Street, New York. Taxes, water, gas, electric, soft water service, telephone, trash removal, Farragut.
(4) I can be reached at office.
(5) Check will be sent to you for the baby.
Check will be sent for you and house, (separate). Bud is taken care of at school."

Exhibit P–2. Defendant, in his leave-taking, had removed all his belongings including his bed, a coffee table, cocktail shakers, liquor glasses, tools, lawn mower and other miscellaneous items. Subsequently, when defendant failed to sup-

port his family, plaintiff instituted the instant maintenance action and the ancillary attachment proceeding. In the latter phase of the proceeding, the sheriff attached the interest of the defendant in premises known as 209 Holly Street, Cranford, New Jersey, title to which was vested in the name of Wrifford White, a brother of the defendant. The attachment embraced, *inter alia*, the defendant's interest in 209 Holly Street as well as the rents thereof. Originally, title to these premises purchased in 1935 was vested in the names of both plaintiff and defendant and the rents thereof totaling approximately $295 a month, were collected by the defendant and deposited in their joint account up until the time of his desertion. Subsequent to the acquisition of 209 Holly Street and in anticipation of purchasing another home in Cranford on Hampton Road, the defendant suggested to the plaintiff, that in the interest of tax savings, that it would be desirable to take title to the Hampton Road property in his mother's name, and that this being done, that an "even swap" would be effected by the medium of which they, the plaintiff and the defendant, would convey the Holly Street premises for the Hampton Road premises, thus obviating a tax problem. Accordingly, plaintiff joined in a deed to the Holly Street property to defendant's mother. The latter did not pay any consideration for the transfer or toward the purchase price of the Hampton Road property. The deed to her was executed early in 1951 and was dated February 23, 1951 and recorded on June 8, 1951. Exhibit D–1. At the time of the execution of the deed to her, the defendant's mother executed a deed back to plaintiff and defendant which never became effective. Defendant's mother retained title to the Holly Street property until she conveyed it to the claimant Wrifford White by deed dated January 9, 1953 and recorded January 21, 1953. Exhibit D–2. During all this time, the defendant received the benefits of the rentals from this property. Upon the institution of the attachment proceeding, the claimant, having been noticed of the pendency of the proceeding by mail and through newspaper advertisement, retained counsel and filed a claim of property in these pro-

ceedings, challenging the propriety of the attachment. An *ad interim* motion by claimant to quash the attachment as well as a counter-motion to dismiss the claim of property were denied pending an inquiry into the merits of the respective contentions of the plaintiff and the claimant. The hearing developed the facts which I have found, *supra*.

At the conclusion of the hearing, I was of the opinion that the defendant, Edward V. White, IV, had already conceived the idea and had already made up his mind to thereafter desert his wife and family, and that the transfer of the title to his mother comprised a part of his scheme to divest himself of his assets and to place them beyond the reach of his wife in the event of any attempt by her to claim the same subsequent to his planned desertion. That a deed was re-executed by his mother to both plaintiff and defendant, indicates to me that his mother was but a straw person, lacking any beneficial interest in the premises in question. The effect of this gesture was to disarm the plaintiff and to lull her into a sense of security, soon to be lost to her by reason of defendant's desertion. While it is true that defendant did not actually leave the bed and home of the plaintiff until March 7, 1953, the separation, in effect, had its onset just before July 14, 1951, about the time of the birth of their daughter, Nancy Ann. It will be seen therefore, that the deed to defendant's mother preceded the separation only by a few months—February 1951—and in my judgment was preconceived and planned by defendant as I have indicated. The further devolution of the title to the claimant by the defendant's mother on January 9, 1953, was calculated by the defendant to further enmesh the Holly Street property in a web and, by additional circumstances, calculated to lend to the series of transactions an atmosphere of validity—which was theretofore lacking—through the advancement of the mother's claim and her contentions that this conveyance was made by her to the claimant in order to augment his income. Designed to ferret out the truth, the hearings elicited the fact that even after the execution of the deed to the claimant, the defendant continued to receive

the income from the Holly Street property. It is difficult
to reconcile this with any theory other than that the defendant was still the beneficial owner of the property and that
the respective transfers culminating in the vesting of the
title in the claimant, comprised a fraud *in toto ab initio*
and I so find and determine. Consequently, the property
and its income should be made available to the plaintiff in
the discharge of defendant's obligation of support for the
plaintiff and their children.

█ Wrifford White claims that a writ of attachment may
not issue in an action for separate maintenance. With this
I do not agree. An attachment is authorized under *N. J. S.*
2A :34–26 which reads as follows:

"When a husband cannot be found within this state to be served
with process, his estate, property and effects within this state and
the rents and profits thereof, may be attached to compel his appearance and performance of any judgment or order which may be made
in the action.

Where the proceedings are by process of attachment and the defendant does not appear, the judgment shall be enforceable only out
of and against the property attached."

█ The essence of claimant's contention is that *R. S.*
2 :50–37 and 2 :50–39 (now *N. J. S.* 2A :34–23 and 2A :34–
24) do not authorize an attachment. Whatever may have
been the law or practice prior to the enactment of *N. J. S.*
2A :34–23 *et seq.*, an examination and analysis of the existing status of the legislation referred to reveals that attachment is now an authorized remedy by which the estate of a
husband who cannot be found in this State to be served
with process, may be made available for the support of his
wife and family, *N. J. S.* 2A :34–26. Nor is the argument
that the legal title is not in defendant's name, tenable. An
equitable interest in lands is subject to attachment, *Williams
v. Michenor*, 11 *N. J. Eq.* 520 (*Ch.* 1858), and this all the
more where a conveyance, such as in this case, was tainted by
fraud, *i. e.*, as in the cited case where the deed was made
to protect the premises from creditors. Indeed, were the
plaintiff a business creditor of the defendant's, the attached

property would be made available to such a creditor. *Williams v. Michenor, supra.* I hold that a deserted wife occupies a status which is not inferior to that of a business creditor in relation to assets of a husband fraudulently conveyed to or held by his *alter ego,* in an effort to defeat her right to support, and consequently, that she is entitled to the same remedies to enforce her claim as are open to ordinary creditors.

■ It is suggested by claimant, that an adjudication should have been sought by plaintiff in an independent action against the defendant, setting aside the questioned conveyance as a fraud, and that then the attachment proceeding might be in order. This is likewise untenable, because with the revision of our court system, the Superior Court, Matrimonial Division, is authorized to determine matters of a purely equitable character where such a determination is necessary and can be made in a matrimonial cause pending before it. *Ippolito v. Ippolito,* 3 *N. J.* 561, 71 *A. 2d* 196 (1950); *R. R.* 4:31–2, 4:93–1 and 4:93–3. A finding of fraud in the matrimonial branch of the court in a matter properly before it, is as effective and binding upon the litigants as if made in the equity branch of the court. No useful purpose would have been served by referring the property aspect of the litigation to another branch of the court.

■ Claimant next points up the argument that he was deprived of his property without due process of law. This, likewise, is not so. The validity of *quasi in rem* proceedings of this character has long been recognized both here and elsewhere. *George v. George,* 20 *N. J. Misc.* 41, 23 *A. 2d* 599 (*Ch.* 1941), and the cases cited therein. Here, the claimant was served in the manner prescribed by statute, *i. e.,* by mail and publication. This constituted valid and due process. *R. R.* 4:77–1 *et seq., George v. George, supra.* Besides, Wrifford White, in filing a claim of property and otherwise submitting to the jurisdiction of the court, cannot thereafter complain of a lack of due process. *Trautman v. Higbie,* 10 *N. J.* 239, 89 *A. 2d* 649 (1952); *Turtur v.*

*Schwarz*, 15 *N. J. Super.* 241, 83 *A. 2d* 306 (*App. Div.* 1951); *Boice v. Boice*, 131 *N. J. Eq.* 41, 22 *A. 2d* 1 (*E. & A.* 1941).

 Claimant next contends that no parol testimony should have been received to impeach the deed from plaintiff to defendant's mother and that its admission was in violation of the statute of frauds. The statute of frauds cannot be invoked to perpetrate a fraud. *Moses v. Moses*, 140 *N. J. Eq.* 575, 53 *A. 2d* 805 (*E. & A.* 1947). The testimony given by the plaintiff was accepted by the court for the purpose of proving equitable title in the defendant, as alleged in the complaint, and to disclose the existence of a fraud. No effort is being made by plaintiff to regain the title in her own right in a proceeding to set aside her deed. She, in effect, acknowledges the validity of the deed to the mother. She is not attempting to disavow her act in having made the conveyance to defendant's mother, Edna White. She contends, however, that as a result of this conveyance and a conveyance made by the mother to the claimant, her husband is the beneficial owner of the property by reason of this fraudulent scheme to which the defendant, his mother, and the claimant are parties. The questioned testimony is therefore, not unlike testimony tending to show the true consideration of a deed and is not in conflict with the statute since it does not vary or enlarge the grant. *Dieckman v. Walser*, 114 *N. J. Eq.* 382, 168 *A.* 582 (*E. & A.* 1933).

 Lastly, claimant relies upon the alleged unclean hands of the plaintiff as a bar to her rights. It is claimed that her conduct in connection with the conveyances on Holly Street and Hampton Road was unconscionable since it was part of a scheme to avoid the capital gains tax. The unclean hands doctrine cannot be invoked save in a proceeding in which the unconscionable conduct took place. *City of Paterson v. Schneider*, 31 *N. J. Super.* 598 (*App. Div.* 1954) and the cases cited therein. Thus, if plaintiff instituted a direct action to set aside the deeds or either of them, then the doctrine could be invoked against plaintiff, assuming, without deciding, that such conduct was unconscionable. Here,

as I have indicated *supra*, no effort is being made by plaintiff to nullify the effect of her deed or to restore her to ownership of the property by a direct adjudication that the deed was a nullity. She, in substance, concedes the validity of the transfer to her mother-in-law, Edna White. Plaintiff has not been guilty of unconscionable conduct in these proceedings and is not subject to the bar of unclean hands. *City of Paterson v. Schneider, supra.* There will be a judgment in favor of the plaintiff in accordance with her prayers in the complaint, and her right to support will be limited solely to the proceeds of the attached property. *N. J. S.* 2*A* :34–26.